McKinney, J.
delivered the opinion of the Court.
This was an action of ejectment in the Circuit Court of Washington county, brought for the recovery of a small island in the Nolachucky river.
The lessor of the plaintiff claims title under a grant from this State, dated 21st of July, 1842, for twenty acres, covering a portion of the bed of the river, from bank to bank, and expressly calling to include the island in controversy. The plaintiff in error — who was defendant in the action — claims title to said island under a grant from the State of North Carolina, to Cornelius O’Neal, for two hundred acres, dated the 26th of October, 1786. This grant calls to begin at a marked tree, on the bank of Nolachucky river; thence various courses and distances, to a stake on the bank of said river, at a different point, and “then up the different meanders of the said river to the place of beginning.”
The decision rests upon the question, whether or not the Nolachucky river is a navigable stream, in the legal sense of that term. If it be such, then it is clear that the boundary of the O’Neal grant would be the margin of the river, and the island in controversy would not be included in said grant, but would pass to the lessor of the plaintiff under his younger grant, which, in terms, embraces it. If it be not a navigable stream, then it is equally clear, that said island is covered by the O’Neal grant, upon the well established principle of construction, that grants of land, *13 bounded on rivers, or upon tbe margins of tbe same, or along tbe same, convey tbe exclusive right and title of tbe grantee to tbe centre or thread of tbe stream, unless tbe terms of tbe grant limit tbe boundary to tbe margin of tbe river, — said island lying adjacent to tbe bank of tbe river, covered by tbe O’Neal grant, and exclusively between said bank and tbe centre of tbe stream.
Without stopping to notice tbe proof in tbe record, or to comment on tbe charge of tbe Court, we will confine ourselves to a brief discussion of tbe legal principles which, we think, apply to tbe case.
By tbe common law, all tide-water rivers are navigable, to tbe extent of tbe flow and re-flow of tbe tide, and tbe absolute proprietary interest in tbe same is in tbe crown; tbe right of soil of owners of land bounded by such tide-water streams extending only to high water mark. Tbe term “navigable,” has in law a technical sense; and as applied to rivers, in England, does not mean such as, in their ordinary state, are navigable in fact, but only to those in which tbe tide ebbs, and flows and so far only as tbe influence of tbe tide extends; above tbe line where tbe tide ceases to have effect, tbe rule of property is reversed, and tbe property in tbe soil, or bed of tbe river, is in tbe riparian proprietors. And such also is tbe principle of tbe common law in reference to all streams not navigable in tbe legal sense.
Tbe rule of tbe common law, as to what is a navigable river, namely — tbe flow and re-flow of tbe tide— was declared by this Court, in Elder vs. Burrus, (6 Hum., 388, 366,) to be inapplicable to this State; and such has been tbe course of decisions in some of *14 the other American courts. This criterion, as applied to England, may be appropriate and practical, because perhaps it embraces pretty much the entire extent of all rivers which, in point of fact, are navigable; but it would be most absurd in its application to our large fresh water rivers, which, though not subject to the influence of the tide, are yet fitted by nature, in their ordinary state, for all the common purposes of navigation.
This Court, in Elder vs. Burrus, rejected the common law rule, and followed the rule of the civil law, as to what constitutes a navigable river. According to the civil law, “navigable rivers are not merely rivers, in which the tide flows and re-flows, but rivers capable of being navigated; that is, navigable in the. common sense of the term. In the words of the Digest, a navigable river is "statio itivrre nmigioAngel on Water courses, § 550.
In Pennsylvania, the common law has been held inapplicable to the great inland rivers of that State, and that the owners of the land on their banks do not, therefore, acquire any ■ right to the soil covered by the waters of such rivers, but that the soil and waters remain in the public. 2 Binney’s R. 475; 14 Serg. and Rawle 71.
In North Carolina it is settled, that the ebbing and flowing of the tide is not the sole test of a navigable river. That if a river be deep enough for sea vessels to navigate to and from the ocean, it is a navigable stream, and the boundary of the adjacent land is not the thread or middle of the channel. 2 Dev. Rep. 30; 3 Dev. R. 59. In 3 Iredell’s Rep. 277, the court said, a navigable stream existed when the waters were suffi- *15 eient in fact to afford a common passage for people in sea vessels.
Tbe same general doctrine bas been beld in South Carolina. 1 McCord’s Rep. 580.
It is to be remarked, that the only change of the common law, effected by the adoption of the rule of the civil law, with us, is the substitution of a new and more appropriate criterion of a navigable river; and that is, not the flow and re-flow of the tide, but simply the fact, whether the river, in the ordinary state of the water, is capable of, and suited to the usual purposes of navigation. In all other respects, the principles of the common law, regulating and defining the respective rights of the public and of the riparian proprietors in rivers of whatever character, remain unchanged, and are to be applied by our Courts.
But it is to be borne in mind, that, although we have adopted a new test of the navigableness of rivers, different from that of the common law, still, the term “navigable,” as applied to streams, is no less a word of technical meaning than at common law; and the distinction •between the technical sense of the term, and its common acceptation, is important to be kept in view, in inquiring into the respective rights of the public and the riparian owners, in reference to the property in the soil, as well as in the use of water courses.
¥e feel the difficulty of the attempt, under the rule of the civil law, to define with exact .precision what is a navigable river, in the' legal sense of the term. We are aware of no less exceptionable criterion than that to be extracted from some of the cases before referred to, namely, a river capable, in the ordinary state of the water, of navigation, ascending and descending, by sea vessels; *16 that is, such vessels as are employed in the ordinary purposes of commerce, whether foreign or inland, and whether steam or sail vessels.
The only view in which it becomes a matter of any great practical importance to distinguish between rivers that are navigable in the technical sense, and those that are not so, is in reference to the rights of the public and the adjacent owners, in respect to the ownership of the bed of the stream; for, so far as regards the use of the stream, for all purposes of navigation, the public have the same right, whether it be navigable, or not navigable.
If the river be a public navigable stream, in the legal sense, the soil covered by the water, as well as the use of the stream, belongs to the public. But if' it be not navigable in the legal meaning of the term, — as is the case in England as to all streams above the flow of the tide — the ownership of the bed of the stream is in the riparian proprietors, but the public have an easement therein, for the purposes of transportation and commercial intercourse. ' A distinction is taken, by the common law, between streams which, in the common acceptation of the term, are suited to some purposes of navigation, and small, shallow streams which are not so. In respect to the former — which, though not navigable in the sense of the law, are yet of sufficient depth, naturally, for valuable floatage, as for rafts, flat-boats, and perhaps small vessels of lighter draft than ordinary,- — -while it is settled, that the right of property, in the bed of the stream, is vested in the riparian proprietor, and in that respect it is to be regarded as a private river; still it is equally well settled, that the public have a right to the free and uninterrupted use and enjoyment of such stream, for all the purposes of transportation and navigation to which it is *17 naturally adapted. And this easemmt, or “ servitude of public interest,” in the phrase of the Roman law, is as absolute and unlimited in the public, in reference to this class of rivers, as to rivers navigable in the technical meaning of the term.
But as to shallow streams, unfit for such purposes of transportation and commerce, both the right of property and use are wholly and absolutely in the .owner of the adjoining lands. Angel on Watercourses, §§ 535, 539, and authorities there- referred to. 3 Kent’s Com. 411, 427.
Erom the foregoing principles it necessarily follows, that the judgment in the present case is erroneous, and must be reversed for- misdirection of the Court in the charge to the Jury.
Having considered this case upon- the principles of law involved in it, rather than upon the facts, we do not feel it incumbent upon us to express any opinion as to the character of the Nolachucky river — whether navigable or otherwise. This question, however, upon the principles herein laid down, will be of no difficult solution.
Neither have we deemed it material to notice particularly the Act of 1799, ch. 35, and other subsequent Acts of like import — declaring that the navigation of Nolachucky, and certain other rivers, “shall be and remain free and open;” and affixing a penalty for any obstruction thereof. We suppose that legislation of this character was neither designed to have, nor can be allowed to have any effect, whatever, upon the rights of the riparian proprietors: More especially can it have no effect upon such rights acquired prior to the date of the earliest statute upon the subject. But *18 these Acts, so far as they provide that the rivers shall remain open and free for purposes of navigation, are merely declaratory of the common law, as lias already, been shown.
The competency of the Legislature to affect the rights of the riparian owner, without compensation to him^ is a jioint which calls for no discussion in this case.
The general principle asserted in the case of Elder vs. Burrus, previously noticed, is fully approved; but the application of that principle to the facts of the particular case — so far as that may be inconsistent with the general principles herein laid down — we are not prepared to sanction.
Judgment reversed.