IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 20, 2000 Session

# THE POINTE, LLC, ET AL. v. LAKE MANAGEMENT ASSOCIATION, INC.

**A Direct Appeal from the Chancery Court for Shelby County**
**No. 98-0972-I     The Honorable Walter L. Evans, Chancellor**

---

**No. W2000-00211-COA-R3-CV - November 6, 2000**

---

This appeal arises from a declaratory judgment action to determine rights in a privately-owned lake. Plaintiffs purchased land adjacent to the artificially-created lake for the purpose of developing residential lots. Subsequent to the sale of the property, Plaintiffs' grantor conveyed title to the lake to Defendant. Defendant claims it has the right to control use of the lake and that Plaintiffs have no right to lake access without Defendant's permission. The trial court granted Defendant's motion for summary judgment on the grounds that: (1) the lake is unnavigable, and no riparian rights can therefore flow to adjoining landowners; (2) the Defendant, as owner of the land subjacent to the lake, has a right to the unimpeded use and control of the property; and (3) any use of the lake by the adjoining property owners without Defendant's consent would constitute a trespass. Plaintiffs appeal.

**Tenn.R.App.P. 3; Appeal as of Right; Judgment of the Chancery Court is Vacated; Summary Judgment Granted to Plaintiffs; Remanded**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY KIRBY LILLARD, J., joined.

David L. Leake, Memphis, For Appellants
David M. Dunlap, Memphis, For Appellants

Robert A. Cox; James F. Horner, Memphis, For Appellee

## OPINION

Plaintiffs, The Pointe, LLC, Sean T. Aldridge and John H. Thomas, appeal the order of the trial court granting Defendant, Lake Management Association, Inc., summary judgment and denying Plaintiffs' motion for summary judgment. Plaintiffs filed a declaratory judgment suit to determine

their rights under a warranty deed to undeveloped land adjacent to a privately-owned, man-made lake located in Shelby County, Tennessee. The trial court granted Defendant's motion for summary judgment, finding that: (1) because the lake is not navigable, no riparian rights flow to adjoining landowners; (2) the Defendant owns the lake and has a right to the unimpeded use and control of the property; and (3) any use of the lake by the adjoining property owners without Defendant's consent would constitute a trespass.

On December 17, 1993, Plaintiff Sean T. Aldridge ("Aldridge") and his partner, Glen Allen Maddox ("Maddox")[1] purchased a 30 acre parcel of land located in Lakeland, Tennessee (the "Property") from Lakeland Development Corporation ("LDC"). The Property is situated immediately adjacent to Garner Lake (the "Lake"), a 247-acre, man-made lake created in the late 1950's or early 1960's, also owned by LDC. Garner Lake was created through the use of an earthen dam across a stream known as "Scotts Creek." In addition to water from the creek, LDC created several wells which tap into an aquifer to provide the water needed to keep the lake at an elevation of approximately 352 feet.

At the time, the Lake was created, LDC owned substantially all of the real property adjacent to and under Garner Lake and, until approximately 1982, LDC was the sole developer of land around the Lake. During that time, LDC developed several residential subdivisions adjacent to the Lake, using the Lake as the focal point of the development plans. In 1982, LDC began to sell off bulk parcels of undeveloped property adjacent to Garner Lake. LDC sold the last such undeveloped parcel to Plaintiffs. The deed (the "Base Deed") to Plaintiffs contains no restrictions regarding use of the Lake, and specifically grants to Plaintiffs "all of the appurtenances and hereditaments thereunto belonging."

Five months after the sale of the Property to Plaintiffs, LDC conveyed title to the property underneath the Lake to Defendant, Lake Management Association, Inc. In January of 1996, Defendant filed for record in the Register's Office of Shelby County a document entitled "Declarations, Easements, and Reciprocal Use Agreement for the Garner Lake, Lakeland, Shelby County, Tennessee" (the "Declaration"). The Declaration, filed after Plaintiffs' Base Deed was recorded, is a unilateral document which seeks to impose certain restrictions and fees relating to the use of the Lake on "all real property owners which adjoin Garner Lake."

In response to Defendant's filing of the Declaration, Plaintiffs filed a Complaint for Declaratory Judgment in Shelby County Chancery Court seeking a determination that they had the right to unrestricted access to and use of the Lake through their deeds to the adjoining property. Both parties filed motions for summary judgment. On January 18, 2000, the Chancellor entered an order denying Plaintiffs' motion for summary judgment and granting the Defendant's motion for summary judgment. Plaintiffs appeal.

---

[1] In late 1997, Maddox conveyed his half-interest in the Property to Plaintiff John H. Thomas ("Thomas"). Aldridge, Thomas and another investor later formed The Pointé, LLC, for the purpose of developing the Property into a fifty-lot residential development to be known as "The Pointé at Lakeland" (the "Development").

The sole issue for appeal is whether the trial court erred in denying Plaintiffs' motion for summary judgment and in granting Defendant's motion for summary judgment. To decide the issue, we must determine if Plaintiffs are entitled to the unrestricted use and enjoyment of the Lake through their Base Deed to property adjoining Garner Lake. The habendum clause of the deed in controversy provides in pertinent part:

> TO HAVE AND TO HOLD the aforesaid real estate, together with all the appurtenances and hereditaments thereunto belonging or in any wise appertaining unto the Grantee, Grantee's heirs and assigns, in fee simple forever . . . .

The facts are undisputed, and the issue concerns the interpretation and legal effect of the Plaintiffs' deed. Issues relating to the interpretation of written instruments involve legal rather than factual issues. *See Rapp Constr. Co. v. Jay Realty*, 809 S.W.2d 490, 491 (Tenn. Ct. App. 1991). These essentially legal questions can be resolved using summary judgment when relevant facts are not in dispute. *See Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. Ct. App. 1992).

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03. Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

Plaintiffs provide three theories under which this Court should find that they have the legal right to unrestricted use of Garner Lake: appurtenances; riparian rights; and implied easements. These theories are closely related and all describe the means by which a property owner is entitled to the use of something which adds to the enjoyment or benefit of his property. We hold that Plaintiffs acquired the right to freely use and enjoy Garner Lake by virtue of riparian rights as an appurtenance to their property in the form of an implied easement.

Black's Law Dictionary describes an appurtenance as something which "is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage for light, air, or heat from or across the land of another." *Black's Law Dictionary*, 103 (6th ed. 1990). The Tennessee Supreme Court has defined an appurtenance as:

> "That which belong to something else; adjunct; appendage; an accessory; something annexed to another thing more worthy; * * * in common parlance and legal acceptation, something belonging to another thing as principal and passing as incident to it, *as a right of way or other easement to land*."

*La Rue v. Greene County Bank*, 166 S.W.2d 1044, 1047 (Tenn. 1942) (quoting Webster's International Dictionary). *See also Mattix v. Sweptson*, 155 S.W. 928, 930 (Tenn. 1913).

Whether an appurtenance is treated as an incident of ownership of property, or as an easement passing with property, it is clear that the grant of an appurtenance in a deed is meant to enhance the value and enjoyment of the property. The United States Supreme Court, in *Hardin v. Jordan*, 40 U.S. 371 (1891), noted that the inherent value in riparian[2] land is in its proximity and accessibility to the water. This inherent value gives rise to a presumption that, when a grantor conveys property adjacent to water, the right to use and enjoy that water passes with the grant. As the Court observed in addressing the issue of ownership in property underneath an Illinois lake:

> ***When land is bounded by a lake or pond, the water . . . is appurtenant to it;*** it constitutes one of the advantages of its situation, and a material part of its value, and enters largely into the consideration for acquiring it. Hence the presumption is that a grant of land thus bounded is intended to include the contiguous land covered by water.

140 U.S. at 390 (emphasis added).

Tennessee law also recognizes such a presumption. In *La Rue*, the Tennessee Supreme Court noted the general rule that a grantor conveys to his grantee "every interest necessary [to the property's] complete enjoyment, including all apparent and necessary easements." 166 S.W.2d at 1048. In *Cox v. Howell*, 65 S.W. 868 (Tenn. 1901), a case in which a mill owner sought to prevent an upper riparian owner from interfering with the stream which powered the mill, the Court wrote that:

> When the Defendant sold to complainant his right and interest in the mill, it carried with it all the easements and appurtenances necessary to its operation as they existed when the sale was made, and the Defendant has no legal or equitable right to disturb the flow and supply of water as they then existed; . . .

*Id.* at 871. The Court in *Cox* also recognized that riparian land derives part of its value from its proximity to water, noting that, "It fully appears that any diminution of the flow of the water. . . would lessen the value of the mill and prove to that extent an injury to the complainant." *Id.* Courts in other jurisdictions have also recognized that water is appurtenant to riparian land and its value is dependent upon access to that water. *See Yellowstone Valley Co. v. Associated Mortgage Investors, Inc.,* 290 P. 255, 258 (Mont. 1930) (recognizing that water rights were appurtenant to land and that,

---

[2]"Strictly speaking, a riparian owner is one whose land abuts upon a river and a littoral owner is one whose land abuts upon a lake or sea. However, current usage . . . has been said to have made the term 'riparian' an acceptable term as to land abutting upon either rivers or lakes." 78 Am Jur 2d *Waters* § 260 (1975).

without irrigation, the land was of little value); ***Griesinger v. Klinhardt***, 9 S.W.2d 978, 981 (Mo. 1928) (noting that an artificial lake was appurtenant to plaintiff's property, and that plaintiff's property would be "practically worthless" if defendant were allowed to lower the level of the lake).

In this case, we agree with Plaintiffs that the Lake is an appurtenance to the adjoining property. Plaintiffs clearly purchased the land because of its proximity to the Lake, and LDC developed existing subdivisions with the Lake as a focal point of the development scheme. It is undisputed that Plaintiffs' property is not as valuable if Defendants are permitted to control access to the Lake, as evidenced by the fact that Plaintiffs' bank withdrew its offer to loan Plaintiffs $2.4 million to develop the land after Defendant informed the bank of its right to control the Lake.

Defendants argue that Plaintiffs do not have the right of free access to the Lake because the Lake is not navigable. Navigability, however, serves only to determine ownership in the land underneath water. ***See State ex rel. Cates v. West Tennessee Land Co.***, 158 S.W. 746, 749 (1913). A body of water which is "essentially valuable" to commerce is considered "legally navigable," belongs to the public and cannot be privately owned.[3] ***Id.*** at 749-50. On the other hand, a body of water which is navigable but not necessary for commerce may be privately owned, subject to a right of access in the public. ***See id.*** A lake or stream which is considered unnavigable may be privately owned and controlled. ***See id.***

Our Supreme Court has recognized riparian rights in owners of property bordering a non-navigable body of water. In ***Webster v. Harris***, 69 S.W. 782 (Tenn. 1902), the Court, quoting from ***Stuart v. Clark's Lessee***, 2 Swan, 9, 58 Am. Dec., 49, said:

> "If the river be a public, navigable stream in the legal sense, the soil covered by the water, as well as the use of the stream, belongs to the public. But if it be not navigable in the legal meaning of the term . . . the ownership of the bed of the stream is in the riparian proprietor, but the public have an easement therein for the purpose of transportation and commercial intercourse. A distinction is taken by the common law between streams which in the common acceptation of the term are suited to some purposes of navigation and small shallow streams which are not so. In respect to the former - which, though not navigable in the sense of the law, are yet of sufficient depth naturally for valuable floatage, as for rafts, flatboats, and perhaps small vessels of lighter draught than ordinary - while it is settled that the right of property in the bed of the stream is vested in the riparian proprietor, and in that respect it is to be regarded as a private river, still it is equally well settled that the public have a right to the free and uninterrupted use and enjoyment of such stream for all

---

[3]Examples of this type of navigable body of water include the Great Lakes and the Mississippi River.

the purposes of transportation and navigation to which it is naturally adapted."

*Id.* at 784.

In 93 C.J.S. *Waters* § 107 (1956), it is stated:

Although a grant of littoral land will convey no more land than the parties intended, provided such intention is revealed, the interest of a riparian owner in the bed of a lake or pond is presumed to pass in a conveyance of the upland, in the absence of an intention to the contrary, as disclosed either by express words of exclusion contained in the grant or conveyance or by such a description as clearly excludes it from the land conveyed.  Although the terms of a grant must be liberally construed in favor of the grantee, the words should receive their everyday meaning, and be considered in the light of the surrounding circumstances and the situation of the parties.  No title to submerged land will pass to a grantee of the upland where the grantor has, in fact, no title to the land under water.

It appears that Tennessee follows this general rule.  In **Holbert v. Edens**, 73 Tenn. 204, 209-10 (1880), the Supreme Court said:

The general rule undoubtedly is that a call for the stream or bank, or object on the bank, and then with the stream according to its meanders, will carry the boundary *ad filum aquae* [to the thread of the water; to the central line or middle of a stream], whether the grant be by the State or a private individual.  (Citations omitted).

Under these authorities, we must disagree with the trial court's determination that there can be no riparian rights in a non-navigable body of water.  Under the rules pertaining to appurtenances, we conclude that the conveyance of upland by the owner of both the upland and the adjacent water transfers the riparian rights absent an express provision to the contrary.

Defendant relies upon our holding in **Sullivan v. Viar**, 1986 WL 3334 (Tenn. Ct. App. 1986), as being controlling authority on this case.  We must respectfully disagree.  In **Sullivan**, the plaintiff and defendant were adjoining landowners, and in order to have a lake constructed by the Obion-Forked Deer Basin Authority, each executed easements for the flooding of part of their land by a lake upon a construction of a dam for that purpose.  After the lake was formed, a dispute arose as to whether the parties had the right to use the entire lake for recreational purposes or whether each party was restricted to that part of the lake lying over the land owned by that party.  This Court held that under the facts of that case, the parties had title to the land underlying the surface water and that each landowner was restricted to the use of the surface water within the boundary lines of his or her own

property. *See id.* at \*3. *Viar* has nothing to do with the conveyance of upland property by the owner of that property and the property underlying the lake, nor does it involve riparian rights.

Defendants also rely upon *Tapoco, Inc. v. Peterson*, 373 S.W.2d 605 (Tenn. 1963), wherein the owner of land underlying an artificially-created lake was granted an injunction to require owners of houseboats to remove same from their anchorage on the lake. In *Tapoco,* the Court recognized the right of the public to use that particular lake and found that the anchoring of the houseboats prevented or impeded public use thereof. *See id.* at 608. The Court noted that the houseboats were moored on land still owned by the plaintiffs, because they were located at least 400 feet from the bed of stream as it existed prior to the construction of the dam. *See id.* at 607. Here again, this case does not involve a conveyance of property bounded by a lake or other body of water and concerning the issue of riparian rights.

Having determined that Plaintiffs did obtain water rights in Garner Lake in their deed to the Property, we must next determine what form these rights take and the extent of the rights. We believe that these rights take the form of an implied easement appurtenant in the Lake which would include, among other things, the right to build docks on the lake and make use of the lake for recreational purposes.

This Court has defined easements as "a right an owner has to some lawful use of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). Tennessee law recognizes several forms of easements, including: express easements; easements by reservation; implied easements; prescriptive easements; and easements by estoppel. Easements fall into two general categories: easements in gross and easements appurtenant. *See id.* In *Pevear*, the Court explained the difference between easements appurtenant and easements in gross:

> In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee. *Goetz v. Knoxville Power & Light Co.*, 154 Tenn. 545, 290 S.W. 409 (1926).

*Id.* at 116. An implied easement appurtenant should only arise where it is of such necessity that we may presume it was within the contemplation of the parties to a conveyance. *See La Rue*, 166 S.W.2d at 1049.

The party asserting an implied easement has the burden of showing "the existence of all facts necessary to create by implication an easement appurtenant to his estate." *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957). Under Tennessee law, those facts are:

> "(1) A separation of the title; (2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and (3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained."

*Johnson v. Headrick,* 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948) (quoting 17 Am. Jur. *Easements*, pp. 945, 946). *See Barrett v. Hill*, 1999 WL 802642 at *3 (Tenn. Ct. App. 1999). Tennessee law interprets "necessity" as meaning "reasonably necessary" for the enjoyment of the dominant tenement. *See, e.g., id.* at 150; *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957); *Johnson v. Headrick*, 237 S.W.2d at 570.

In the case at bar, it is undisputed that Garner Lake was built in the early 1960's for the purpose of a lake community development. LDC developed the Lake for recreational purposes and developed subdivisions around the Lake imposing restrictions concerning the recreational use of the Lake by purchasers in those subdivisions. The activities of LDC clearly show that the Lake was intended to be the motivating factor to induce the purchase of the property in these subdivisions. Proof in the record shows that the Lake has a direct influence on the value of the properties on its banks. In determining whether the above elements are met in this case, the record first demonstrates that Plaintiffs' property was, at the time of the conveyance, part of a larger estate which included the land under Garner Lake. LDC's sale of the Property to Plaintiffs separated the unified title. Second, the Lake has existed for over thirty years and is clearly meant to be a permanent feature of Lakeland, Tennessee and, more specifically, of the developments surrounding the Lake. Third, the proposed easement is reasonably necessary to the beneficial enjoyment of Plaintiffs' land because, without lake access, that land is worth significantly less. The fact that Plaintiffs' lender withdrew its commitment to make a multi-million dollar loan is clear evidence of the decreased value. Based on the foregoing, we find that the conveyance of the property to Plaintiffs adjacent to Garner Lake carried with it an implied easement appurtenant which gives Plaintiffs the right of reasonable access to the Lake.

Accordingly, the order of the trial court granting summary judgment to Defendant is vacated, and summary judgment is granted to Plaintiffs. The case is remanded to the trial court for such further proceedings as necessary. Costs of the appeal are assessed to appellee, Lake Management Association, Inc.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.