IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Brief January 16, 2002

## STACEY J. STANLEY v. DANIEL RING, ET AL.

**Direct Appeal from the Chancery Court for Obion County**
No. 21,537      William Michael Maloan, Chancellor

**No. W2001-00950-COA-R3-CV - Filed March 20, 2002**

This case concerns riparian rights to a privately owned lake in a subdivision in Obion County. The trial court found that the boundaries of lots abutting the lake extend into the lake, and that the owners of these lots have riparian rights to limited use of the lake as reasonable under the circumstances. We modify in part and affirm in part.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., HOLLY K. LILLARD, J., joined.

David L. Hamblen, Union City, Tennessee, for the appellant, Stacey J. Stanley.

Bruce Moss, Union City, Tennessee, for the appellees, Daniel Ring and wife, Deon Ring, Jerry Bond and wife, Jackie Bond, Robert Rose and Paul Seger and wife, Georgette Seger.

**OPINION**

This case concerns use of a privately owned lake in a subdivision by landowners whose lots abut the lake. The underlying facts in this case are undisputed. In 1976, Raymond Clark purchased a farm in Obion county consisting of approximately 30 acres. He built a home and lake on this property, and in 1978, developed a subdivision on the eastern and southeastern sides of the lake. The subdivision includes the four lakeside lots at dispute in this case, which Mr. Clark sold to the current owners' predecessors in interest.

The subdivision plat as recorded in the Register's Office of Obion County sets out the specific dimensions of each lot as "plus or minus," and depicts the lots as extending to the water's edge. The deeds conveying the lots do not describe the property by metes and bounds, but by reference to the recorded plat. The deeds are silent as to use of the lake. Mr. Clark, however, testified that the proximity of the lake was a positive selling point, and the lot owners ("Defendants")

testified that the fact that their lots adjoined the lake was a factor in their decision to purchase the property.

In 1980, Mr. Clark sold the remaining acreage, including the lake, to Mr. Larry Wade. Mr. Wade subsequently sold the property to Ms. Stacey Stanley in 1994. In June of 1999, Ms. Stanley filed a petition in Obion Country Chancery Court to quiet title and establish boundary lines of the property. Ms. Stanley also sought and was granted a temporary restraining order to enjoin the Defendants from interfering with a survey of the property and from harassing or threatening her. Defendants counter-claimed, asserting the right to use of the lake, and stating that they had enjoyed relatively free access to the lake under the prior owners of the property. The surveys subsequently prepared show the lots as now extending two to fourteen feet into the lake. Two surveyors testified that this was probably due to erosion of the banks over the years.

The chancellor found that the boundary line of the property should be established using the original Plat as filed by Mr. Clark, without using the "plus or minus" indications as to distances. He further ordered that the adjoining property owners abutting the lake have rights as riparian owners for the limited purpose of fishing from the banks of their property without interfering with Ms. Stacey's reasonable use of the lake. This order was entered "exclusive of the Court finding that an implied easement exists." Defendants accept the chancellor's award of limited riparian rights and concede that such limits are reasonable under the circumstances. Ms. Stanley now appeals.

### *Issues on Appeal*

The issues on appeal in this case, as we perceive them, are:

(1) Whether the boundaries of Defendants' lots extend into the lake or end at the water's edge.

(2) Whether the Chancellor erred in awarding Defendants limited riparian rights to fish from the banks of their property into the lake.

### *Standard of Review*

Our standard of review of a nonjury trial is *de novo* upon the record. *See Wright v. City of Knoxville*, 898 S.W.2d 177, 181 (Tenn. 1995). There is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the trial court's conclusions on matters of law or on mixed questions of fact and law, however, our review is *de novo* with no presumption of correctness. *See Bowden v. Ward*, 275 S.W.3d 913, 916 (Tenn. 2000); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); Tenn. R. App. P. 13(d).

*Establishment of Boundaries*

As noted above, the deeds conveying the lots adjoining the lake refer to the original plat as recorded by Mr. Clark for a description of the property. This plat depicts the lots as ending at the edge of the lake. The metes and bounds measurements for the boundaries extending to the lake are depicted as "plus or minus." The chancellor found that the boundary line of the lake should be established using the original plat recorded by Mr. Clark, without using the "plus or minus" indications on the distances. Using these distances, the chancellor found that Defendants' lots now extend into the lake.

Appellees argue that this finding by the chancellor is a finding of fact which must be upheld unless the preponderance of evidence is otherwise. We disagree. The establishment of the boundaries of Defendants' property presents a mixed question of fact and law. The determination of the original boundaries, as presented by the plat, is a question of fact. The determination of whether Defendants own and control property now submerged by the lake due to natural erosion presents a question of law. Thus, the determination of the current boundary line is a mixed question of fact and law to which we attach no presumption of correctness to the trial court's findings. Reading the record as a whole, however, we believe that the preponderance of the evidence supports a conclusion that the original boundaries of Defendants' lots ended at the water's edge.

As drawn on the original plat, the boundary lines extending from the front of Defendants' lots to the lake clearly end at the lake edge. The fact that these distances were measured in terms of "plus or minus," while all other boundaries were measured in exact distances, supports a conclusion that the distances were never calculated exactly, but that the lots ended at the edge of the lake. Mr. Clark, the original developer of the property, testified that the boundaries of the lots ended at the water's edge. He further stated that the Defendants' predecessors in interest never had any ownership rights in the lake itself. The surveyor for the Defendants testified that, in his opinion, the original line would have been "dry," but erosion of the bank has resulted in an expansion of the lake onto Defendants' lots. Read together, the record supports a finding that the water's edge constituted the original boundary of the lots, and that Defendants' lots did not extend into the lake. Defendants therefore did not possess any part of the lake bed itself.

The erosion of the bank of the lake such that what was once dry land is now under water raises a question of law regarding property ownership, in the context of changing water lines, where the water itself defines a property boundary. The law applicable to this circumstance, in the instance of a navigable waterway, is well-settled. When a property boundary is determined by a body of water, and when that body is altered gradually by erosion or accretion, the boundary follows that of the water.[1] *See Arkansas v. Tennessee*, 246 U.S. 158, 173 (1917); 25 Tenn. Juris. *Water and Watercourses* § 17 (1985). "Where a water line is the boundary of a given lot, that line, no matter

---

[1]Accretion occurs when an "area of land is increased by the gradual deposit of soil due to the action of a boundary river, stream, lake, pond or tidal water." 5A Richard R. Powell, *Powell on Real Property* Ch. 66 ¶ 717[1] (Patrick J. Rohan ed., 1993). Erosion is the "process by which land is gradually covered by water." *Id.*

how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting water line . . . ." *Jefferis v. East Omaha Land Co.*, 134 U.S. 178, 188 (1890). "The riparian or littoral owner is given title to lands that are gradually added be accretion . . . [l]ikewise, a riparian owner loses title to lands that are submerged though erosion."[2] 5A Richard R. Powell, *Powell on Real Property* Ch. 66 ¶ 717[2] (Patrick J. Rohan ed.,1993). The basis for this general rule is that the gain or loss of land from gradual erosion and accretion may be imperceptible such that it is difficult or impossible to determine from where the gain or loss of the land came. 25 Tenn. Juris. *Water and Watercourses* § 17 (1985). Original boundaries altered by such gradual erosion cease to exist, and the relationship between the riparian lands and the waterway are determined by the new conditions. *Id.* Through the doctrine of re-emergence, title to an identifiable parcel lost due to erosion will return to its previous owner should it re-emerge. 5A Powell, *supra* ¶ 717[2]. Generally, the character of the water as navigable or nonnavigable is immaterial with respect to application of this rule. 78 Am. Jur. 2d *Waters* § 315 (2002).

A riparian owner takes title only to that which is conveyed by the deed. 78 Am. Jur. 2d *Waters* § 44 (2002).[3] In this case, Defendants' deeds convey title to the lots as depicted in the plat. These lots end at the water's edge. The approximate distances noted on the plat reflects this general rule. The boundaries are "plus or minus," or approximately those indicated given the natural ebb and flow of water. We therefore modify that part of the trial court's order which sets the boundaries of the parties' property at the distances noted in the plat without the "plus or minus," and hold that the boundary line is set at the water's edge as depicted by the original plat. The boundary line between the parties will therefore shift due to the gradual processes of accretion and erosion. Defendants have no ownership interest in the lake itself.

### *Limited Riparian Rights*

Ms. Stanley asserts that prior owners always had restricted Defendants' use of the lake, and that Mr. Clark never intended to convey any interest in the lake to Defendants' predecessors in interest. She contends that since Defendants do not own any part of the lake bed, they have no right to use the lake. The essence of her argument, as we perceive it, is that Defendants do not have riparian rights to use of the lake.

The deeds conveying the lots to Defendants are silent as to any rights to use of the lake, but convey the land "with the appurtenances, estate, title, and interest thereto belonging . . . ." This Court recently addressed riparian rights inherent in such a deed in *The Pointe, LLC v. Lake Management Ass'n*, 50 S.W.3d 471 (Tenn. Ct. App. 2000). In *The Pointe*, we stated, "it is clear that the grant of an appurtenance in a deed is meant to enhance the value and enjoyment of the

---

[2]Although not an issue here, it should be noted that such is not the case when the change is caused by avulsion, a "sudden and perceptible change in the location of a body of water." 5A Powell, *supra* Ch. 66 ¶ 717[1][2].

[3]Technically, the term "littoral" refers to land adjacent to a lake or sea, while the term "riparian" refers to land adjacent to a river. Current usage, however, generally applies "riparian" to land abutting either a river or a lake. *The Pointe, LLC v. Lake Management Ass'n.*, 50 S.W.3d 471, 475 n.2 (Tenn. Ct. App. 2000).

property." *Id*. at 475. We noted that the inherent value of riparian land is derived from the accessibility and proximity of the water. *Id.* We further noted that when, as here, property adjacent to water is conveyed with all appurtenances, there is a presumption that the right to use and enjoyment of the water is part of the grant. *Id.* These riparian interests are presumed unless the terms of the grant, conveyance or deed expressly exclude them, or unless the description of the property in the deed clearly indicates that such rights are not attached to the property. *Id.* at 476-77. *See also*, Curtis M. Brown, et al, *Boundary Control and Legal Principles* 199 (3rd ed 1986). Riparian water rights vest when the riparian land is acquired. 5A Richard R. Powell, *Powell on Real Property* Ch. 65 ¶ 713[3] (Patrick J. Rohan ed.,1993). These rights are "considered part of the package of rights in the fee." *Id.* They depend not on ownership of the land beneath the water, but on contact of the landowner's land with the water. Brown, *supra*.

As noted, the deeds conveying these lots are silent as to the right to use the lake and the property is described by reference to the plat. The plat indicates that the lots extend to the edge of the lake, and Mr. Clark testified that the proximity to the lake was a positive selling point. Mr. Clark and Mr. Wade testified that Defendants were permitted to fish in the lake only with permission. Ms. Stanley testified that she did not discuss the usage of the lake by the adjoining lot owners with Mr. Wade when she purchased the property, that she did not tell the Defendants not to fish in the lake until after this litigation was initiated, and that most of the fishing by Defendants was from their own property.

The court below granted Defendants limited riparian rights to fish from their property at the banks of the lake without addressing the issue of whether an implied easement exists. Riparian rights, while considered part of the fee, are not unlimited. 5A Powell, *supra* ¶ 713[4]. They are limited to what is acceptable or reasonable under the circumstances. *Id*. Defendants agree that such limited rights are reasonable under the circumstances. In light of the foregoing, we agree with the trial court that the lake is appurtenant to the abutting property of the Defendants. We accordingly affirm the trial court's judgment awarding Defendants limited riparian rights to fish from their lots.

### *Conclusion*

We modify the trial court's determination that the boundary lines of Defendants' lots should be determined by the metes and bounds measurements minus the "plus or minus" symbols noted in the plat. We hold that the boundary lines are at the water's edge and will shift due to accretion and erosion. We affirm the award of limited riparian rights. Costs of this appeal are taxed one-half to the appellant, Ms. Stacey Stanley, and her surety, and one-half to the appellees, Daniel Ring and wife, Deon Ring, Jerry Bond and wife, Jackie Bond, Robert Rose, and Paul Seger and wife, Georgette Seger, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE