IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2002 Session

# JOHN DAVID RHOADES, II, ET AL. V. MICHAEL L. TAYLOR, ET AL.

**Appeal from the Chancery Court for Sumner County**
**No. 2000 C 23     Tom E. Gray, Chancellor**

---

**No. M2001-00643-COA-R3-CV - Filed March 4, 2003**

---

This appeal involves a conflict between neighbors over whether the Taylors have a right to use a gravel driveway located on property owned by the Rhoades to access their property. The trial court found that an implied easement was proved. The Rhoades appeal that judgment to this court arguing that the Taylors failed to prove two elements necessary for a finding of an implied easement. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and ELLEN HOBBS LYLE, SP. J., joined.

Wayne Detring, Hendersonville, Tennessee, for the appellants, John David Rhoades, II, et al.

Joe M. Haynes, Goodlettsville, Tennessee, for the appellees, Michael L. Taylor, et al.

**OPINION**

I. Facts

This case arises from a dispute between two neighbors concerning the use of a gravel drive known as Rhoades Lane. John David Rhoades, II, Tempie Rhoades Jones, Anna Grace Rhoades, and Rhoades National Corporation (the "Rhoades") presently own or reside on approximately 168.7 acres located behind the property of Michael and Diana Taylor off of Schell[1] Road, a public road in Hendersonville, Tennessee. Rhoades Lane is a twelve to sixteen foot wide gravel drive which borders the back of the Taylors' property and extends over one mile to the houses and property of the Rhoades.

---

[1]There is some discrepancy in the record regarding whether the correct spelling is "Shell" or "Schell" Road. For consistency, we will use the same spelling as that used by the trial court, which is Schell Road.

In August of 1982, the late John D. Rhoades purchased a tract of land that contained approximately three and one half acres from Anthony J. and Georgia K. Billis. Mr. Rhoades built a house on the property sometime in 1986. During the construction of the residence, Rhoades Lane was used for ingress and egress to the lot.

On November 6, 1986, Mr. Rhoades and his wife, Anna G. Rhoades, conveyed the house and lot, officially known as 1851 Schell Road[2] to James M. and Beverly Brimm by warranty deed. The conveyance was of a triangular tract of land consisting of approximately .861 acres[3] that had been part of the larger lot purchased by Mr. Rhoades in 1982. According to the testimony of Mr. Brimm, at the time of the conveyance, there was no driveway from Schell Road to the house. The only access to the house was via Rhoades Lane. The Brimms used Rhoades Lane to access their home during the time that they lived there.

On July 6, 1993, the Taylors purchased the property owned by the Brimms. The Taylors have resided in the home and have used Rhoades Lane for ingress and egress to their home continuously since purchasing the property. The Rhoades obtained title to the John D. Rhoades property upon his death in August of 1999.

There is between 260 and 295.84 feet of frontage[4] on Schell Road along the Taylor property. The Taylors have an attached, one car garage at the rear of their home accessed by their driveway from Rhoades Lane and would have to drive around their house in order to pull into the garage if they had to access their property by Schell Road. There is also a detached, three car garage that was built by the Taylors.

According to the testimony of the Brimms and the Taylors, Rhoades Lane has been used as the only means of access to what is now the Taylor property since John D. Rhoades purchased the property. The Brimms used Rhoades Lane to access the house during the seven years they resided on the property. At the time they purchased the property, the Taylors were not informed that they needed permission to use Rhoades Lane.[5]

---

[2]The Taylors' counter-complaint states the Taylors have since moved their mailbox and changed their address to 100 Rhoades Lane at the request of the Sumner County 911 Director, Mr. Buddy Shaffer. The counter-complaint goes on to state that the Taylors received a letter from Mr. Shaffer stating that their correct 911 address was 100 Rhoades Lane and requesting that the Taylors file a change of address form with the post office and mark their mailbox accordingly.

[3]This is the acreage after a deed reformation was granted by the trial court.

[4]According to Mr. Bruce Rainey, a surveyor who did work for the senior Mr. Rhoades on several occasions, the property has 295.84 feet of frontage on Schell Road. However, the trial court stated that there was 260 feet of frontage on Schell Road.

[5]We note that the original sales contract for the property between the Taylors and the Brimms had contained a provision granting the Taylors permanent ingress and egress to their property from Rhoades Lane. This provision, however, was struck from the contract when the Brimms, on advice from their realtor, informed the Taylors that they had

(continued...)

The Rhoades filed a complaint against the Taylors seeking injunctive relief to prohibit the Taylors from using Rhoades Lane to access their property and a declaratory judgment that the Taylors had no property interest in Rhoades Lane. The Taylors filed an answer and counter-complaint seeking an easement by implication for ingress and egress to their property via Rhoades Lane. The Taylors also filed a third-party complaint against James M. and Beverly Brimm seeking reformation of their deed. The trial court granted the deed reformation, and the reformation of the deed was not appealed.

The Rhoades and the Taylors entered an agreed judgment with regard to a mutual restraining order which prohibited any party from interfering with the survey of their property, building a fence, and coming onto or placing property onto the other party's property. In addition, the parties agreed that neither would change or remove survey markings and decided that in the event that the Taylors failed to prevail, they would move their mailbox and change their address.

After the trial of the matter, the trial court granted the Taylors an easement by implication allowing them the use of Rhoades Lane from Schell Road to the driveway in the rear of their house. The Rhoades appealed. The sole issue on appeal is whether the trial court erred in granting the Taylors an easement by implication for ingress and egress to their property over Rhoades Lane.

## II. Implied Easement

An easement is an interest in another's real property that confers on the easement's holder an enforceable right to use that real property for a specific purpose. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998). Under Tennessee law, several forms of easements are recognized, including: express easements; easements by reservation; implied easements; prescriptive easements; and easements by estoppel. *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). There are two general categories of easements: easements in gross and easements appurtenant. *Id.* In *Pevear*, this Court explained the difference between these two forms of easements, stating:

> In an easement appurtenant, there are 2 tracts of land, the dominant tenement, and the servient tenement. The dominant tenement benefits in some way from the use of the servient tenement. Easements in gross are simply a personal interest or right to use the land of another which does not benefit another property, or dominant estate, thus easements in gross usually involve only one parcel. An easement appurtenant to land is favored over an easement in gross in Tennessee. *Goetz v. Knoxville Power & Light Co.*, 154 Tenn. 545, 290 S.W. 409 (Tenn. 1926).

924 S.W.2d at 116.

---

[5](...continued)
no authority to grant the easement, since the Rhoades, and not the Brimms, owned Rhoades Lane.

The Taylors claim an easement appurtenant to their property. An implied easement appurtenant should only arise where it is of such necessity that we may presume it was within the contemplation of the parties to a conveyance. *The Point, LLC. v. Lake Mgmt. Assoc.*, 50 S.W.3d 471, 478 (Tenn. Ct. App. 2000); *Fowler v. Wilbanks*, 48 S.W.3d 738, 740 (Tenn. Ct. App. 2000) (both citing *LaRue v. Greene County Bank*, 166 S.W.2d 1044, 1049 (Tenn. 1942)). With regard to easements by implication, this Court has explained:

> Unlike express easements, [implied easements] take into account the prior use made of conveyed land. They ordain the perpetuation of that use on the general principle that property is usually passed along with its burdens and that the parties, as evidenced by their actions, understood that their property was thus conveyed. See Roger A. Cunningham, et al., *The Law of Property* § § 8.4-8.5 (1984); 2A James Casner, *American Law of Property*, § § 8.31-8.38 (1952).

*Barrett v. Hill*, No. 01A01-9806-CV-00295, 1999 Tenn. App. LEXIS 879, at *6-*7 (Tenn. Ct. App. Oct. 7, 1999) (no Tenn. R. App. P. 11 application filed).

The party asserting an implied easement has the burden of showing "the existence of all facts necessary to create by implication an easement appurtenant to his estate." *The Point, LLC.*, 50 S.W.3d at 478; *Fowler*, 48 S.W.3d at 741 (both citing *Line v. Miller*, 309 S.W.2d 376, 377 (Tenn. Ct. App. 1957)). Under Tennessee law the party asserting an implied easement bears the burden of proving three elements:

> 1) A separation of title; 2) Necessity that, before the separation takes place, the use which gives rise to the easement shall have been so long continued and obvious or manifest as to show that it was meant to be permanent; and 3) Necessity that the easement be essential to the beneficial enjoyment of the land granted or retained.

*The Point, LLC.*, 50 S.W.3d at 478; *Fowler*, 48 S.W.3d at 741(citing *Johnson v. Headrick*, 34 Tenn. App. 294, 299, 237 S.W.2d 567, 570 (Tenn. Ct. App. 1948)).

In the present case, there is no dispute that the necessary element of separation of title was shown. John D. Rhoades and his wife owned the claimed dominant tenement (now the Taylors' property) as part of the three acres they purchased from Mr. and Mrs. Billis. John D. Rhoades and his wife sold off the portion now belonging to the Taylors, thereby separating ownership of title to the two parcels. The Rhoades argue that the Taylors failed to prove the other two necessary elements, namely, the continuous use before separation and the reasonable necessity elements.

First, the Rhoades argue that the Taylors failed to prove that before the separation of title took place, the use that gave rise to the easement continued so long and obviously that it manifested the intent that it was meant to be permanent. The trial court disagreed, finding that during construction and prior to the sale of the residence to the Brimms, which constituted the separation of title, Mr. Rhoades accessed the property by means of Rhoades Lane. The court further found that

Mr. Rhoades and his son-in-law "put in a culvert or a drain pipe so that they could travel over and easier into the driveway" from Rhoades Lane. The court also noted that there was no driveway from Schell Road at the time of the conveyance to the Brimms and that the only driveway that entered the property was the one from Rhoades Lane, which the Brimms used during the seven years they owned the property. The court also emphasized the senior Mr. Rhoades's placement of the attached garage at the rear of the house facing Rhoades Lane. The trial court found that all of these factors evidenced that the intent of the parties was that there be permanent access to the Brimms' [now the Taylors'] driveway from Rhoades Lane. Thus, the trial court concluded that there was sufficient use of Rhoades Lane prior to the separation of title for ingress and egress to the property and that the parties intended that the Brimms continue to have such use on a permanent basis. We agree.

This court has adopted the prevailing rule with respect to implied easements which provides that:

> Where, during the unity of title, an apparently permanent and obvious servitude is imposed on one part of an estate in favor of another part, which servitude is in use at the time of severance and is necessary for the reasonable enjoyment of the other part, on a severance of the ownership the grant of the right to continue such use arises by implication of law.

*Lively v. Noe*, 460 S.W.2d 852, 854-55 (Tenn. Ct. App. 1970).

In addition, as stated in *Bradley v. McLeod*, easements by implication ordain the perpetuation of the prior use "on the general principle that property is usually passed along with its burdens." *Bradley*, 984 S.W.2d at 934. Where a single owner sells portions of his or her property to two different purchasers, "the respective portions granted are subject to or benefitted by, as the case may be, an easement corresponding to such use." *Lively*, 460 S.W.2d at 855.

Keeping these principles in mind, we now consider the Rhoades' argument that the access to the house from Rhoades Lane was "only for a short time in 1986 during construction." To support this argument, they claim that there was another driveway entering what is now the Taylors' property that ran directly from Schell Road. They testified that this driveway was in existence prior to the construction of the Taylors' residence and that Mr. John Rhoades and his wife occasionally used this driveway in addition to the driveway off Rhoades Lane. The trial court apparently concluded that the evidence did not support the Rhoades' claim that this driveway remained in existence at the time the property was conveyed to the Brimms. Upon reviewing the record, we find that the evidence does not preponderate against this implicit finding by the trial court.

The testimony presented at trial by the Brimms was that the driveway off Rhoades Lane was the only means of ingress or egress to their property at all times, including when they purchased it, and during the seven years they owned the property. Further, as to the existence of a second driveway running from Schell Road, Mr. Brimm testified as follows:

Q. As a matter of fact, there has been some testimony that you've heard about another driveway existing off of Shell Road to get to the house that was there before this house and maybe even the use of that driveway during the construction period. Was that driveway there when you saw the house?

A. No, it wasn't.

Q. Was there any gravel there or anything to indicate that it had been used this way?

A. There was just grass out in front of the house.

Q. So the only driveway that you ever observed was this driveway that we are looking at right here that goes from Rhodes Lane into the garage?

A. That's correct.

Further, we find that the evidence does not preponderate against the trial court's finding that there was sufficient use of Rhoades Lane to access what is now the Taylor property prior to the separation of title to indicate that the parties intended that use to be permanent. Mr. Rhoades, the owner of both parcels, built the driveway and garage to what is now the Taylors' house in a way that clearly demonstrated his intent that the property be accessed by Rhoades Lane. Therefore, we find that when Mr. Rhoades conveyed what is now the Taylor property to the Brimms, that property was benefitted by an implied easement across Rhoades Lane, while the property retained by Mr. Rhoades, and now owned by the appellants, was correspondingly burdened by the easement.

Next, the Rhoades argue that the Taylors did not prove that an implied easement across Rhoades Lane is necessary to the beneficial enjoyment of the Taylors' property. Tennessee has adopted a rule of "reasonable" necessity for the enjoyment of the dominant tenement, as opposed to the rule of "strict" necessity. *The Point, LLC.*, 50 S.W.3d at 478; *Fowler*, 48 S.W.3d at 741(citing *Line*, 43 Tenn. App. at 351-52, 309 S.W.2d at 377; *Johnson*, 237 S.W.2d at 570). Under this rule, the easement must be of such necessity that it is presumed to have been within the contemplation of the parties at the time of the severance. *LaRue*, 166 S.W.2d at 1049; *Line*, 43 Tenn. App. at 351, 309 S.W.2d at 378; *Johnson*, 237 S.W.2d at 570. The trial court in the present case found that this element was met, stating:

It [the use of Rhoades Lane to access the property] was in the contemplation of Mr. Rhoades, who severed the property, who subdivided the property, who sold and conveyed the property to the Brimms, and it was in the contemplation of the Brimms when they bought it, because there was no other egress and ingress into that property, other than Rhoades Lane.

On review, we find that the evidence also does not preponderate against this finding by the trial court. We note that in *Howard v. Thurman*, No. M1998-00147-COA-R3-CV, 2000 Tenn. App.

LEXIS 258, at *5 (Tenn. Ct. App. Apr. 26, 2000) (no Tenn. R. App. P. 11 application filed), this court rejected a similar argument. In that case, the appellants argued that the appellee had failed to prove that an easement was reasonably necessary to the beneficial enjoyment of her property because "she could gain access to her lot from the main road on the front by putting in a culvert and cutting a driveway into her front yard." We held that an implied easement was reasonably necessary where:

> The only alternatives involve building another driveway. . . or obtaining another easement from another landowner. When we consider that the driveway and parking area have served Ms. Howard's home from the time it was built, the necessity of keeping that access seems perfectly reasonable.

*Id*.

We believe that this reasoning is applicable to the present case. For example, the Taylors could access their property directly from Schell Road, but to do so would require them to cut down several trees and to construct a new driveway. The parties do not dispute that this new driveway would be less convenient for the Taylors when they need to pull in and out of the attached, one car garage. In addition, we note the testimony by Mr. Rex Shoulders of the Tennessee Department of Environment Conservation and Water Protection, that building a new driveway on such a small lot could cause problems with regard to the septic tank system on the property. Therefore, we agree with the trial court that in this case, the implied easement across Rhoades Lane in favor of the Taylors is a reasonable necessity.

### III. Conclusion

For the reasons stated herein, we affirm the decision of the trial court finding that the Taylors have an easement by implication to use Rhoades Lane to access their property. We remand the case for further proceedings consistent with this opinion, as may be necessary. The costs of appeal are taxed against the appellants, the Rhoades, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE