IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 19, 2002 Session

## STELLA KELTNER, ET AL. v. OPEN LAKE SPORTING CLUB

Direct Appeal from the Chancery Court for Lauderdale County
No. 10,448     Jon Kerry Blackwood, Chancellor

No. W2002-00449-COA-R3-CV - Filed February 12, 2003

This is a dispute over ownership of the Right Hand Arm portion of Open Lake. The trial court awarded summary judgment to Open Lake Sporting Club. Having determined that there are genuine issues of material facts, we reverse and remand for further proceedings.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and
Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Kenneth R. Shuttleworth and William C. Sessions, Memphis, Tennessee, for the appellants, Stella Keltner and Norris Nix.

Joseph W. Barnwell, Memphis, Tennessee, for the appellee, Open Lake Sporting Club.

**OPINION**

This appeal arises from a cause of action to quiet title to a body of water known as Right Hand Arm, which runs out of Open Lake in Lauderdale County, Tennessee. The lake is adjacent to the Mississippi River and apparently was formed during the New Madrid earthquake in 1811-12. The main body of Open Lake is owned by the defendant, Open Lake Sporting Club ("OLSC"). Right Hand Arm is a narrow portion of the lake jutting eastward from the main body of water and continuing through the property owned by the plaintiff Stella Keltner (Keltner). The largest portion of Right Hand Arm is situated in property now owned by the United States Fish and Wildlife Service.

OLSC is a sporting club which was organized in 1905. In the same year, it acquired property including the main part of Open Lake. OLSC asserts it received the property by conveyance through three separated deeds. One conveyance was by deed executed by A. Booth and Company in January 26, 1905. A second deed was executed by the Anderson-Tulley Company in 1905. The third

conveyance was from Adam Scott and wife in the same year. In its counter-complaint, OLSC contends that,

> [t]he deed describes Open Lake and Right Hand Arm as follows:
>
> > "all that part of the waters of the Big Open Lake including what is called the 'right arm' on the land lying North of and East of said Big Open Lake . . ."

Several members of OLSC have cabins on its property and have erected duck blinds for hunting on the lake.

Keltner owns two separate tracts of land contiguous to the south and east of Open Lake. The tract to the east of the lake comprises the eastern boundary of Open Lake. It consists of 576 acres, through which flows Right Hand Arm. Keltner traces her chain of title to the property to a conveyance by A. B. White to R. F. Gaines and J. C. Marley in November of 1887. The tract now owned by the United States Fish and Wildlife Service was conveyed to the United States by the Anderson-Tulley Company and is situated to the east of the Keltner property.

In 1995, Keltner leased the property to Norris Nix (Nix). Keltner submits that prior to 1995, the tract was leased for several decades to OLSC, giving OLSC's members the right to use the property for hunting and fishing and for ingress and egress to the portion of Right Hand Arm located on the United States' property. She contends that this right was extinguished upon expiration of the lease. OLSC denies this lease. In its counter-complaint, OLSC asserts that the only leases it ever had were a 1981 squirrel hunting lease and a 1994 lease for recreational activities. Keltner's predecessor in interest, Charlie Keltner, was a member of OLSC. In 1952, OLSC authorized the expenditure of $3,000 for the construction of a dam at the entrance of Right Hand Arm and appointed Charlie Keltner and another member to determine its precise location. OLSC contends that this dam interrupts the water connection between Open Lake and Right Hand Arm, and that it was constructed with the understanding that other OLSC members would be permitted access to Right Hand Arm through Keltner's property. This arrangement, according to OLSC, was in effect for over fifty years. In its counter-complaint, OLSC further asserted open and notorious use of the disputed waters, a pathway across the Keltner tract to the main portion of Right Hand Arm, and a twelve acre tract bordered on the north, south and west by Open Lake and on the east by the Keltner property.

The actions giving rise to this lawsuit began in 1996, when counsel for OLSC advised Stella Keltner by letter that she should cease to exercise any ownership rights of Right Hand Arm, including the granting of any rights to a third party. Thus after nearly one-hundred years of peaceful co-existence and a mutually beneficial relationship between OLSC and the plaintiff's predecessor in interest, this dispute arose over who may have access to the Keltner property.

In April of 1997, Keltner and Nix filed a complaint for declaratory judgment to quiet title and determine their rights under the 1945 deed conveying the property to Keltner's predecessors in interest. Keltner submits that pursuant to this deed, her predecessors in interest acquired the right to unrestricted access to and ownership of the portion of Right Hand Arm that is located within the undisputed property boundary. She further contends that OLSC has no right to use the portion of Right Hand Arm situated on her property for any reason. In her complaint, she prayed for a judgment declaring her title to the disputed portion of Right Hand Arm and for an injunction prohibiting the members of OLSC from using or trespassing upon her property for any reason without her express permission.

OLSC does not dispute Keltner's ownership of the land, or that her predecessors in interest had clear and unencumbered title to the property.[1] However, OLSC contends that Keltner has no ownership interest in the waters of Right Hand Arm. OLSC contends that Keltners obtained title to the land lying to the north and south side of Right Arm, but not to Right Hand Arm itself. It asserts that it obtained title to all of Right Hand Arm, the largest portion of which is currently on property of the United States.[2] Although in its counter-complaint OLSC quotes from the Anderson-Tulley deed to establish its ownership of Right Hand Arm, it later asserted that it acquired the eastern portion of Right Hand Arm through the 1905 conveyance from the Anderson-Tulley Company, and the southern end, which is at dispute here, through the conveyance from the A. Booth Company. OLSC contends that the Chancery Court of Lauderdale County previously decreed that Open Lake was owned by OLSC. Keltner asserts that the Anderson-Tulley Company did not own and therefore could not have conveyed the disputed portion of Right Hand Arm to OLSC, and that the chancery court did not decree that OLSC owns Right Hand Arm.

In June of 1997, OLSC filed a counter-complaint to quiet title and for injunctive relief. OLSC prayed the court to declare it the owner of all the waters of Right Hand Arm, to find it has an easement by prescription across the Keltner property to reach the waters of Right Hand Arm and the twelve acre tract, and for an injunction requiring Keltner to permit its members to have access to Right Hand Arm and the tract. In its answer to Keltner's first set of interrogatories, OLSC asserted that it was abandoning its claim for prescriptive easement, and that it would amend its pleadings accordingly. Both parties moved for summary judgment. The trial court awarded summary judgment to OLSC in January 2002. Keltner filed a timely notice of appeal to this Court.

---

[1] In its answer and counter-complaint, OLSC alleges that Stella Keltner is not the sole owner of the tract of land. In her answer, Stella Keltner admits that Sharon Keltner and Clay Keltner each own a one-eighth undivided interest of the Keltner property.

[2] OLSC asserts ownership of the main portion of Right Hand Arm, which is situated in property currently owned by the United States, based on the 1905 conveyance from the Anderson-Tulley Company. We note that this portion of Right Hand Arm is not a subject of dispute between the parties to this cause of action. Thus this Opinion does not address whether OLSC is correct in this assertion or whether the United States must be joined as a party to this action.

### Issues Presented

The issues as presented by Keltner for our review are:

(1)      [Whether] the chancery court erred in denying the Keltners' motion for summary judgment because as an incident of ownership, and by operation of law, the Keltners acquired ownership of that portion of Right Hand Arm that is within the Keltner property line under the doctrine of riparian rights.

(2)      [Whether] the chancery court erred in granting Open Lake's motion for summary judgment as there are material facts in dispute as to Open Lake's claim that it is the owner of the portion of Right Hand Arm that is within the undisputed property boundary of the Keltners.

     A.      Open Lake recognized as long ago as May 3, 1943, that the waters of Right Hand Arm located within the Keltner property boundary were owned by the Keltners' predecessors in interest.

     B.      The chancery court erred in granting Open Lake's motion for summary judgment as a genuine issue of material fact exists as to whether the Anderson-Tulley Company could grant an interest in and to waters it did not own.

     C.      The chancery court erred in granting Open Lake's motion for summary judgment because there exist genuine issues of material fact as to the ability of Open Lake to trace its ownership interest in the Right Hand Arm body of water back to a grantor with proper title.

### Standard of Review

Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts of the cause of action and that it is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). Mere assertions that the nonmoving party has no evidence does not suffice to entitle the movant to summary judgment. *McCarley*, 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the nonmoving party's claim. *Id.* If the moving party can demonstrate that the nonmoving party will not be able to carry its burden of proof at trial on an essential element of its case, summary judgment is appropriate. *Id.*

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts or that the moving party is not entitled to summary judgment as a matter of law. *Id.*; *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The nonmoving party cannot merely rely on the pleadings, but must demonstrate that essential elements of a claim exist by: 1) pointing to evidence that creates a factual dispute; 2) re-enforcing evidence challenged by the moving party; 3) offering additional evidence which establishes a material dispute; 4) submitting a Tenn. R. Civ. P. 56.06 affidavit explaining the need for additional time for discovery. *McCarley*, 960 S.W.2d at 588.

We review an award of summary judgment *de novo*, with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). In determining whether to award summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of the non-moving party. *Staples*, 15 S.W.3d at 89. Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.* If there is any doubt about whether a genuine issue exists, summary judgment should not be awarded. *McCarley*, 960 S.W.2d at 588.

The interpretation of a written legal document such as a deed is a matter of law. *Pointe, LLC v. Lake Mgmt. Ass'n,* 50 S.W.3d 471, 474 (Tenn. Ct. App., 2000)(*perm. app. denied*). Our review of a trial court's conclusions on issues of law is *de novo*, with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996); Tenn. R. App. P. 13(d).

### *Riparian Rights*

We first address Keltner's assertion that she owns the waters of Right Hand Arm by virtue of the doctrine of riparian rights.[3] The doctrine of riparian rights provides that owners of land through which a natural watercourse runs have the right to use the water for useful purposes. *Black's Law Dictionary* 1192 (5th ed. 1979). Thus riparian owners are presumed to have the right to use of the water abutting their property, although they may not own the body of water itself.

When a deed is silent as to the use of the water abutting the land which it conveys, but conveys the land with all appurtenances, there is a presumption that the right to the use and enjoyment of the water is part of the grant. *Pointe*, 50 S.W.3d at 475. This presumption arises from the fact that the inherent value of riparian land is derived from the proximity of the water. *Id.* Unless the deed specifically excludes riparian rights, or unless it is clear from the property description in the deed that the right to the use of the water is excluded, riparian rights will be presumed as an appurtenance. *Id.* at 476-77. Such rights depend not on ownership of the land

---

[3]Technically, the term "littoral" refers to land adjacent to a lake or sea, while the term "riparian" refers to land adjacent to a river. Current usage, however, generally applies "riparian" to land abutting either a river or a lake. *Pointe, LLC v. Lake Mgmt. Ass'n*, 50 S.W.3d 471, 475 n.2 (Tenn. Ct. App. 2000).

beneath the water, but on the contact between the land and the water. ***See Stanley v Ring***, No. W2001-00950-COA-R3-CV, 2002 WL 1751409, at * 4 (Tenn. Ct. App. Mar. 20, 2002) (***no perm. app. filed***). Thus we agree with Keltner that in the absence of language in the deed of conveyance excluding riparian rights to the waters of Right Hand Arm, such rights as held by the conveyor are presumed to have passed as part of the conveyance of property. The extent of riparian rights is a question of reasonableness. 93 C.J.S. ***Waters*** §§ 13, 14 (2001). What constitutes reasonableness is a question of fact to be determined in light of the circumstances. 93 C.J.S. ***Waters*** § 16 (2001); ***Stanley***, 2002 WL 1751409, at * 4.

The existence of riparian rights, or the right to use of the water, however, does not equate with ownership of the body of water itself. We accordingly disagree that the doctrine of riparian rights, without more, is sufficient to establish Keltner's ownership of Right Hand Arm as a matter of law. We next turn to the deeds themselves to determine whether the disputed portion of Right Hand Arm was conveyed as part of the tract conveyed to Keltner's predecessor in interest.

### *Ownership of Right Hand Arm Pursuant to the Deeds*

A non-navigable lake or stream may be privately owned. ***Pointe, LLC v. Lake Mgmt. Ass'n***, 50 S.W.3d 471, 476 (Tenn Ct. App. 2000). A riparian owner takes title only to that which is conveyed by the deed. 78 Am Jur 2d ***Waters*** § 44 (2002). In ***Pointe***, we noted that Tennessee follows the general rule that:

> [a]lthough a grant of littoral land will convey no more land than the parties intended, provided such intention is revealed, the interest of a riparian owner in the bed of a lake or pond is presumed to pass in a conveyance of the upland, in the absence of an intention to the contrary, as disclosed either by express words of exclusion contained in the grant or conveyance or by such a description as clearly excludes it from the land conveyed. Although the terms of a grant must be liberally construed in favor of the grantee, the words should receive their everyday meaning, and be considered in the light of the surrounding circumstances and the situation of the parties. No title to submerged land will pass to the grantee of the upland where the grantor has, in fact, no title to the land under water.

***Pointe***, 50 S.W.3d at 476-77 (quoting 93 C.J.S. ***Waters*** § 107 (1956)).

Having exhaustively reviewed this record, we believe there are genuine issues of material fact which render summary judgment inappropriate in this case. Keltner argues that summary judgment for OLSC is in error because the Anderson-Tulley Company did not own and therefore could not convey the disputed portion of Right Hand Arm to OLSC. If the trial court awarded summary judgment based on the belief that the disputed waters were conveyed to OLSC by the Anderson-Tulley Company, this assertion is true.

Mr. Bill Harmon (Mr. Harmon), the secretary-treasurer and member of the Board of Directors of OLSC who was deposed as the representative of OLSC, stated that OLSC does not base its ownership of the disputed waters on the Anderson-Tulley conveyance. That conveyance included the northern portion of the main body of Open Lake and, it is asserted, the main portion of Right Hand Arm. According to Mr. Harmon, OLSC acquired the disputed portion of Right Hand Arm through the conveyance from the A. Booth Company. Mr. Harmon further stated that he did not believe there was any document other than that conveying the Booth Company property that would establish OLSC's ownership of the disputed portion of Right Hand Arm. Thus the Anderson-Tulley deed referenced in OLSC's counter-complaint is not relevant to the determination of who owns the waters running through Keltner's property.

OLSC asserts that it has superior title to the disputed waters because it can trace ownership of its property to the original land grant of 1856. Assuming, *arguendo*, that this is true, it is not particularly helpful to the determination of whether OLSC has good title to the portion of Right Hand Arm flowing through the Keltner property. OLSC's title to the large portion of Right Hand Arm as conveyed by the Anderson-Tulley Company is not in dispute in this case. According to the deposition of Kenneth Max Billingsley (Mr. Billingsley), a surveyor and forester retained by OLSC, the land grant "certainly" did not include all of Right Hand Arm. Clearly, the main portion of Right Hand Arm was not part of the original land grant, but was situated on property formerly owned by the Anderson-Tulley Company and now owned by the United States. Further, according to Mr. Billingsley, the exact parameters of the land grant itself have not been definitively determined. Mr. Billingsley stated that as far as he could tell, there was no way to determine whether the grant included the portion of Right Hand Arm at dispute in this case. As no professional survey has been made to determine the boundaries of the land grant, it is practically impossible for this Court to determine its boundaries. We note, however, that OLSC does not dispute Keltner's ownership of the land through which Right Hand Arm runs. Thus even assuming the Keltner property was within the boundaries of the 1856 land grant, this tract of land was conveyed to Keltner's predecessor in interest through uncontested conveyances traced back to 1887. The legitimacy of these conveyances simply is not at dispute in this case.

We believe the pivotal issues in this case to be whether the A. Booth Company had title to the disputed area of Right Hand Arm when it conveyed its property to OLSC and, if it did, whether the Right Hand Arm waters were part of that conveyance. OLSC asserts that the wording of the 1945 conveyance of the Keltner property to Charlie Keltner, the plaintiff's father-in-law, is conclusive evidence that the Keltner property did not include the waters of Right Hand Arm. We disagree. OLSC does not contend, and we do not find in the deeds, that any of the conveyances before 1945 specifically excluded the water. The first deed conveying the property from Mr. Calcutt to Charlie Keltner stated, "[i]t is understood that this conveyance does not include any claims the grantor may have or may hereinafter have to the waters, the title to which is claimed by the Open Lake Sporting Club." Mr. Calcutt executed a second deed in 1945 conveying whatever interest he might have had in the waters. As far as we can determine, Right Hand Arm is not specifically excluded from any of the conveyances in the Keltner chain of title, and Keltner's title to the tract of

land has been conceded.[4] We cannot determine from the record before us to what bodies of water the Calcutt conveyance refers.

In order to determine whether OLSC has title to the disputed waters, the trial court must first determine whether the A. Booth Company had title to a narrow strip of waters running through property it did not own. If so, that ownership did not include the land. Moreover, if the Booth Company did own the disputed waters, its ownership had to have ended at what is now the Keltner eastern boundary, as that portion of Right Hand Arm undisputedly was owned by the Anderson-Tulley Company and is now situated on property owned by the United States. While this would have resulted in a unique configuration, it raises an issue of material fact to be addressed by the trial court.

### *Recognition of Ownership by Agreement*

Parol evidence is not admissible to alter an unambiguous deed. *See Staub v. Hampton*, 101 S.W. 776, 781 (Tenn. 1907). However, when deeds are ambiguous, the court may consider parol evidence of the circumstances and conditions surrounding the conveyance to resolve the ambiguity. *Preston v. Bush*, 408 S.W.2d 675, 677 (Tenn. Ct. App. 1966)(*perm. app. denied*) When deeds are ambiguous with regard to the boundary between adjoining properties, the boundary can be established by evidence of a parol agreement between the landowners. *Thornburg v. Chase*, 606 S.W.2d 672, 674 (Tenn. Ct. App. 1980). Such an agreement does not violate the statute of frauds where the deed is not so patently ambiguous as to be void. *Id.* Where parties have recognized agreement of a boundary through their actions, direct evidence of a formal agreement is not required. *Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn. Ct. App. 1984). An oral agreement between property owners to establish a property boundary in the face of ambiguous deeds can be shown through circumstances and evidence that the parties have recognized an agreement. *Id.* The establishment of such a boundary through parol agreement is predominately a matter of intent as evidenced by the words and deeds of the parties. *See, e.g., Brooks v. Brake*, No. 01A01-9508-CH-00365, 1996 WL 252322, at *5 (Tenn. Ct. App. May 15, 1996) (*no perm. app. filed*). Although this case is not a property boundary dispute in the usual sense, we believe this general rule is apt in the case now before us.

Keltners submit that OLSC has recognized that the waters of Right Hand Arm were owned by the Keltners and their predecessors in interest. They argue that this is supported by the minutes of stockholders' meetings since 1943, and the OLSC's use of Keltner land and waters was by express permission of the Keltners. Keltner offers as evidence a 1991 permit by which Charlie Keltner granted OLSC members permission to hunt on his land and to cross his property. Also in the record is a 1972 letter from OLSC's secretary to its members stating that OLSC "has leased all hunting and fishing rights for one year on the land owned by Charlie Keltner that lies along the East Bank of the

---

[4]OLSC additionally submits a plat used in the conveyance to Mr. Calcutt, Charlie Keltner's predecessor in interest, as evidence that the disputed waters were never a part of the Keltner tract. On this plat, the portions conveyed were colored in red, the portions outside of the conveyance were colored in blue. OLSC contends that since the disputed waters were not colored in red, they were not part of the conveyance. We find this unconvincing as none of the waters were colored-in, neither in red nor blue.

lake and also the land across the reach."[5] The minutes of OLSC's stockholder meetings and Ms. Keltner's deposition reflect that this lease continued through the early 1990's.

Having read the stockholder's meeting minutes and reviewed the leases and correspondence, we are convinced only that OLSC recognized Keltner owned the land. In her brief, Keltner contends, "at a called meeting of the stockholders of Open Lake on October 23, 1943, the committee authorized to lease the 'Calcutt part of the Right Arm' reported that they had not been able to do anything." The minutes in fact read, "[t]he committee appointed to lease . . . the Calcutt part of the lake [in addition to other parts] . . . reported that they had not been able to do anything." Based on the record before us, we are satisfied that the actions of OLSC and Charlie Keltner evidence definitive agreement on Keltner's ownership of the property. An issue of fact remains, however, on whether the OLSC's actions are sufficient to constitute recognition of Keltner's ownership of the waters.

OLSC further submits that its ownership of Right Hand Arm previously was determined by the Chancery Court of Lauderdale County in *Open Lake Sporting Club v. Lauderdale Haywood Angling Club*, No. 7191 R.D. (Ch. Lauderdale, Feb. 8, 1991). We disagree. The chancellor in that case determined OLSC owns Open Lake; it did not address Right Hand Arm or any portion of the Keltner tract.

### *Conclusion*

Unresolved issues of material fact remain in this case such that summary judgment is not appropriate. We remand for further proceedings and findings of fact regarding whether the A. Booth Company conveyance to OLSC included the disputed area of Right Hand Arm and whether the conduct between OLSC and Keltner's predecessor in interest evidenced recognition of either party's ownership of the disputed waters. Costs of this appeal are taxed to the appellee, Open Lake Sporting Club.

_____
DAVID R. FARMER, JUDGE

---

[5]The Reach, also referred to as Long Lake, apparently is another stream running through Keltners' property.