IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 2, 2011 Session

# MOUNTAIN VALLEY PROPERTIES, INC. v. THE RIVER PRESERVE OWNERS' ASSOCIATION, INC., ET AL.

### Appeal from the Chancery Court for Hamilton County
### No. 09-0531     W. Frank Brown, III, Chancellor

### No. E2010-01728-COA-R3-CV-FILED-JUNE 13, 2011

Mountain Valley Properties, Inc. ("Plaintiff") sued The River Preserve Owners' Association, Inc., Richard J. Prichard, Pamela L. Prichard, Joseph E. Scott, and Paula A. Scott ("Defendants") with regard to disputes concerning a tract of land owned by Plaintiff located in a residential development situated on Chickamauga Lake in Hamilton County, Tennessee. Both Plaintiff and Defendants filed motions for summary judgment. After a hearing, the Trial Court entered its order denying Plaintiff's motion for summary judgment and granting Defendants' motions for summary judgment after finding and holding, *inter alia*, that Plaintiff does not have standing to contest the building of a community parking area on land not owned by Plaintiff; that Plaintiff does not have the right to close off an existing drive to other land owners in the community; and that Plaintiff should not be allowed to produce additional evidence after the hearing on the motions for summary judgment. Plaintiff appeals to this Court. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Adam U. Holland, Chattanooga, Tennessee, for the appellant, Mountain Valley Properties, Inc.

Sam D. Elliott, Chattanooga, Tennessee, for the appellee, The River Preserve Owners' Association, Inc.

Arnold A. Stulce, Jr., Chattanooga, Tennessee, for the appellees, Richard J. Prichard and Pamela L. Prichard, and Joseph E. Scott and Paula A. Scott.

# OPINION

## Background

In 2005, Plaintiff purchased at auction a tract of land ("Lot 7") located within The River Preserve, a residential development on Chickamauga Lake in Hamilton County, Tennessee. As the outcome of the issues raised on appeal depends upon the interpretation of several documents associated with Plaintiff's purchase of Lot 7, we will quote the pertinent portions of the relevant documents.

Plaintiff took title to Lot 7 by virtue of a Warranty Deed, which provides, in pertinent part:

THIS CONVEYANCE MADE SUBJECT TO THE FOLLOWING:

Restrictions and Easements contained in Special Warranty Deed from the United States of America, acting by and through its legal agent, the Tennessee Valley Authority, to R.H. Siskin and Sons, Inc., recorded in Book 997, Page 369, in the Register's Office of Hamilton County, Tennessee, as amended by Modification of Special Warranty Deed and Abandonment of Lake Access Rights and Declaration of Restrictive Covenants (between the Tennessee Valley Authority and Robmer Partners) of record in Book 7823, Page 409, in the Register's Office of Hamilton County, Tennessee.

Terms and conditions contained in Declaration of Covenants, Restrictions and Easements for The River Preserve of record in Book 7855, Page 346, in the Register's Office of Hamilton County, Tennessee (the "Declaration").

Fifty (50) foot Shoreline Management Zone as shown on Exhibit "A" of the Declaration.

Forty (40) foot Non-Exclusive Easements for Ingress, Egress and Utilities as shown on Exhibit "A" of the Declaration.…

Lot 7 is subject to a Declaration of Covenants, Restrictions and Easements For The River Preserve ("the Covenants"), which provides, in pertinent part:

2.1. The River Preserve Owners' Association, Inc. There has been or will be formed the Association having the name The River Preserve Owners' Association, Inc., a Tennessee nonprofit corporation (the "Association"),

which Association shall be the governing body for all of the Owners and shall be operated to provide for the maintenance, repair, replacement, administration, operation and care of the utility easements, community dock, community parking area, the Existing Drive as set forth on the Plat, and any and all appurtenances (the "Common Properties")....

* * *

4.1.  Utility Easement.  All utilities shall be underground, except for required above ground appurtenances.  A perpetual easement is reserved for the installation, construction and maintenance of utilities, including but not limited to electricity, gas, water, telephone, cable T.V., and drainage, and no structure of any kind shall be erected or maintained upon or over said easement.  Such easements are part of the Common Properties.  The utilities shall be located within the southern portion of Foster Hixson Cemetery Road as it extends from Lake Ridge Drive to the forty (40) foot Non-exclusive Easement for Ingress, Egress & Utilities containing the Existing Drive, as shown on the Plat, and then shall be located within said easement, as shown on the Plat, from its beginning point to its terminus at the western boundary line of Lot Eight (8)....

* * *

4.3.  Community Parking Area.  Within sixty (60) days of the date of this Declaration, the owner of Lot Seven (7) shall designate the placement of and grant to the Association, upon Lot Seven (7) (near the Community Dock), a parking area easement within which the Association shall construct a community parking area containing ten (10) parking spaces. The Association shall pay for the construction and maintenance of the community parking area and maintain liability insurance for the same.  The construction of the community parking area is mandatory and is not subject to any limitations on capital expenditures in the Bylaws.  Construction shall be completed on or before the date of the completion of the community dock.  The community parking area shall be part of the Common Properties.  The Association shall also construct a walking path from the community parking area to the Community Dock.  The Association shall pay for the construction and maintenance of the walking path and maintain liability insurance for the same. The only portions of Lot Seven (7) available for the use of the community as a whole are the community parking area, walking path, and those portions of the Community Dock located within Lot Seven (7).  The community as a

-3-

whole shall not have the use or enjoyment of any other portions of Lot Seven (7), except for the Common Properties as set forth herein.

In connection with the purchase of Lot 7, Plaintiff also executed a Certification[1] which states:

I, the undersigned, affirm that I have carefully and completely read and/or have had my attorney review on my behalf (1) the Declaration of Covenants, Restrictions and Easements for The River Preserve of record in Book 7855, Page 346, in the Register's Office of Hamilton County, Tennessee and (2) the Modification of Special Warranty Deed and Abandonment of Lake Access Rights and Declaration of Restrictive Covenants (between the Tennessee Valley Authority and Robmer Partners) of record in Book 7823, Page 409, in the Register's Office of Hamilton County, Tennessee. I affirmatively represent I fully understand, accept, and agree to the terms and effect of each of the terms contained in the above referenced documents.

In pertinent part, a Modification of Special Warranty Deed and Abandonment of Lake Access Rights and Declaration of Restrictive Covenants ("Modification Deed") between the Tennessee Valley Authority as the grantor and Robmer Partners as the grantee or owner provides:

WHEREAS, by virtue of the Deed, GRANTOR also conveyed the following: … 2) the right of suitable ingress and egress over the adjoining land lying between the 685.44-foot mean sea level ("msl") contour elevation and the waters of the lake ("Lake Access Rights"); ….

* * *

WHEREAS, in exchange therefor, GRANTEE has agreed to pay to GRANTOR the amount set forth below and has agreed to place certain restrictions upon said Land and to abandon it's [sic] Lake Access Rights with respect to all of said Land except to the extent necessary to make application for TVA approval to locate one community dock facility within said development for the common use of all lot owners; ….

* * *

---

[1]The Certification was executed by Plaintiff's President, Steven F. Barnhart.

-4-

2. <u>ABANDONMENT OF LAKE ACCESS RIGHTS</u>

OWNER hereby declares that it has abandoned all present use of, has no further need for, and has no intention of making any further use of and does hereby waive, abandon, and extinguish said Lake Access Rights; provided however, OWNER specifically reserves such Lake Access Rights at a location to be identified by OWNER and approved in advance and in writing by TVA to the extent necessary to make application for TVA approval to construct, maintain and use one community dock facility for the common use of all lot owners in The River Preserve development. Said facility shall be constructed as approved in advance and in writing by TVA in accordance with its policies and procedures. FURTHERMORE, OWNER hereby jointly and severally renounces all right, title, and interest which it has in and to said Lake Access Rights to the extent described herein, it being the intention of this instrument to effect and record the formal abandonment and legal extinguishment of said Lake Access Rights except as reserved by OWNER herein.

* * *

D. With the exception of the 2-acre building site, the remaining acreage within each lot shall be maintained in a natural state with no removal of vegetation or clearing of trees; provided however, OWNER may conduct limited clearing and tree trimming activities to the extent necessary to establish a view corridor for a building site. In addition, access roads or driveways to building sites may be constructed as generally located and indicated on The River Preserve Drawing or as approved in advance and in writing by TVA. Provided, such activities shall not impact or disturb the Shoreline Management Zone ("SMZ") or the Sensitive Area as set forth in covenants F. and G. below; notwithstanding the foregoing, that portion of the existing drive (generally shown as a "field road" on said Exhibit B) located within the SMZ and fronting Lots 7 and 8 may continue to be maintained so long as said maintenance area does not exceed twenty (20) feet in width, utilities may be installed along said drive in the SMZ, and a small parking area may be constructed on Lot 7 to serve the community dock facility referred to herein, all in accordance with plans approved in advance and in writing by TVA in accordance with established policies and procedures.

Disputes arose between Plaintiff and defendant The River Preserve Owners' Association, Inc. and the individual defendants who own other lots within The River Preserve. Plaintiff filed a complaint seeking, in part, a declaration that Plaintiff has the right

to select the location of the community parking lot, and that Defendants are enjoined from further construction of a roadway and paving of the community parking area designated by Defendants. Plaintiff also sought damages for breach of contract and trespass, among other things. Defendants answered the complaint and filed counterclaims seeking, in part, a declaration enjoining Plaintiff from interfering with Defendants' use of the existing drive and the non-exclusive easement.

The River Preserve Owners' Association, Inc., filed a motion for summary judgment in February of 2010. Plaintiff filed a motion for summary judgment in March of 2010. The individual defendants, Richard J. Prichard, Pamela L. Prichard, Joseph E. Scott, and Paula A. Scott, also filed a motion for summary judgment in March of 2010.

A hearing was held on the motions for summary judgment. After that hearing, Plaintiff filed a Notice of Late Filing of Exhibits seeking to properly file the documents which were attached to Plaintiff's brief but not attached to Plaintiff's motion for summary judgment, and also to file additional exhibits as rebuttal[2] to arguments made during the hearing on the motions for summary judgment. When Defendants objected to the additional evidence, Plaintiff filed a motion seeking approval of the Trial Court to file the additional evidence.

The Trial Court entered its Memorandum Opinion and Order June 9, 2010 denying Plaintiff's motion for summary judgment and Plaintiff's motion for submission of additional evidence, and granting Defendants' motions for summary judgment. In the June 9, 2010 order, the Trial Court found and held, *inter alia*:

This dispute surrounds a tract of land that Plaintiff Mountain Valley Properties, Inc. ("Plaintiff") purchased at auction on August 27, 2005. The tract sits on the Chickamauga Lake and is known as "Lot 7." Lot 7 is subject to a Modified Special Warranty Deed ("Modified Deed") and a Declaration of Covenants, Restrictions, and Easements for the River Preserve ("Covenants"). The Defendants are The River Preserve Owners' Association, Inc. ("the Association") and Richard J. Prichard, Pamela L. Prichard, Joseph E. Scott, and Paula A. Scott, owners of other lots in the subdivision.

---

[2]When Defendants' filed a partial objection to Plaintiff's notice of late filing of exhibits, Plaintiff responded that it was offering one of the proposed exhibits to rebut argument made by one of the attorney's during oral argument on the motion for summary judgment. Statements made by an attorney during argument, however, are not evidence and thus there was no evidence introduced in oral argument to be rebutted.

The Modified Deed restricts a certain usage of the land for the Tennessee Valley Authority ("TVA"). This deed sets aside a portion of the land at the shore of the lake as the Shoreline Management Zone ("SMZ"), and the owner relinquishes all rights to that portion of the property. This deed asserts that the property owner relinquishes all lake access rights, except those necessary to "construct, maintain, and use one community dock facility for the common use of all lot owners in The River Preserve Development." Furthermore, TVA must approve building sites on the land.

The Modified Deed also provides that a "small parking area may be constructed on Lot 7 to serve the community dock facility … in accordance with plans approved in advance and in writing by TVA in accordance with established policies and procedures." The Modified Deed further provides for an existing drive or field road located within the SMZ, which may continue to be maintained and have utilities installed.

The Covenants also provide certain restrictions on the use of the land. The Covenants grant the Association the right to construct a community parking area on Lot 7, at a place selected by the owner within 60 days. The Covenants also provide for the Association to construct a walking path on Lot 7 which would lead to a community dock. The Covenants list several parts of Lot 7 as "Common Properties" and indicate that the community will have use and enjoyment of these parts of the property. These Common Properties consist of "the utility easements, community dock, community parking area, the Existing Drive as set forth on the Plat, and any and all appurtenances."

The Covenants further provide that the owners of Lots 7, 8, and 9 will construct and share a driveway, for which they will share the maintenance costs. This is to be built in the "Proposed Drive" area as set forth in the Plat.

At the sale closing on March 10, 2006, Plaintiff's president certified that he understood and accepted the Declaration of Covenants and Modified Deed. Plaintiff did not select a place for the parking area to be built on Lot 7, and the Association sought and received TVA approval to build it within the Shoreline Management Zone adjacent to Lot 7. Furthermore, Plaintiff wishes to close off the existing road to all but utilities and maintenance, and Defendants disagree that Plaintiff has this right. The Association, the Prichards, and the Scotts filed Counterclaims for a Declaration of Rights, an order that Plaintiff not interfere with Defendants' use of the disputed properties, and attorneys' fees.

-7-

* * *

In this case, all of the parties agree that there are no undisputed facts and that summary judgment is the appropriate means of resolution in this case. This case involves only the interpretation of a written contract.…

### 1. Association's Placement of Parking Lot

Under the terms of the Covenants, a community parking area was to be placed on Lot 7, and Lot 7's owner, Plaintiff, was required to set a place for the parking area within 60 days. The Association agreed with TVA that they would build the Parking Area not on Plaintiff's Lot, but within the TVA controlled Shoreline Management Zone. Plaintiff objects that this would block its view of the lake and reduce its property value.

While the court appreciates Plaintiff's concerns about the placement of the parking area in relation to Lot 7, there does not appear to be any genuine dispute that the parking area is to be built on land to which Plaintiff has no rights. "In the absence of statute or contract, the general rule is that a landowner may, by building on his own land, deprive the adjoining owner of the view which he had before the structure was erected without subjecting himself to legal liability." *Southern Advertising Co. v. Sherman*, 308 S.W.2d 491, 494 (Tenn. Ct. App. 1957). Under the terms of the Modified Deed, Plaintiff relinquished all control of the Shoreline Management Zone. Here, TVA has full control of the land, and it has agreed to allow the Association to build on it. Unless a contract prohibits it, Plaintiff does not have a right to hold another party liable for the loss of its view.

Plaintiff asserts that the contract prevents building on the Shoreline Management Zone because the contract makes other provisions for the parking area to be built on Lot 7. While it is true that the agreement between the parties does specifically provide for a parking area and walking path to be built on Lot 7, it does not prohibit building such an area elsewhere. In fact, the Modified Deed specifically provides that Plaintiff has abandoned its general lake access rights exclusive to Lot 7. It specifically states "Owner hereby declares that it has abandoned all present use of, has no further need for, and has no intention of making any further use of and does hereby waive, abandon, and extinguish said Lake Access Rights." The Covenants provide for a parking area on Lot 7, but do not mandate that that area be exclusive. Plaintiff has not pointed to any part of the agreements that prohibit anyone from

-8-

building in the SMZ with TVA's permission.

Plaintiff also argues that it purchased the property based on the representation that it would be lakefront property, based on representations made at the auction and by auction materials provided stating that Lot 7 was being sold and developed as lakefront property. This argument fails for several reasons. First, the Modified Deed and Covenants came later in time than Plaintiff's purchase of the property at auction. Second, when Plaintiff signed these agreements, it acknowledged that it had "fully underst[ood], accept[ed], and agree[d] to the terms and effects of each of the terms" contained in the Modified Deed and Restrictive Covenants. Third, Plaintiff acknowledges that it did not rely on any representations from The River Preserve Owners['] Association, Inc., in connection with the purchase. If Plaintiff believes that it was misled by the seller, it could have taken the proper action against that seller.

Plaintiff further argues that the Association's intentions contravene the free use of property, and the agreement should therefore be narrowly construed. It is true that Tennessee law provides that restrictions on the free use of property are to be narrowly construed. *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). Furthermore, covenants are to be "strictly construed because they are in derogation of a property owner's right of unrestricted use of their property." *Id*. Plaintiff argues that placing the parking area in the Shoreline Management Zone would be a greater burden on the estate than placing it on Lot 7; therefore, it would be in violation of the covenants and the above case law. This overlooks the fact, discussed above, that the land in question is simply not Plaintiff's land to control. There is no need for concern about strictly construing the covenants or narrowly construing restrictions on the free use of land because Plaintiff's land is not in question here. TVA controls the land, and TVA gave permission for the Association to use it to build. Plaintiff has no rights to the land and no ability to prevent the use of it.

The issue ultimately comes down to one of standing. In order to establish standing, a plaintiff must show that it has sustained a "distinct and palpable injury," which must be "an injury to a recognized legal right or interest." *Wood v. Metropolitan Nashville & Davidson County Government*, 196 S.W.3d 152, 158 (Tenn. Ct. App. 2005). Here, Tennessee law is clear that there is no recognized right or legal interest in a view. *Southern Advertising Co.*, 308 S.W.2d at 494. Therefore, Plaintiff has no standing to challenge any

deprivation of the view it might have had if TVA had not allowed the Association to build in the SMZ.

### 2. Plaintiff's Right to Close the Existing Drive

Plaintiff also argues that the Covenants and Modified Deed give it the right to close off the Existing Drive to everything except utilities and maintenance. Covenants are valid and are generally binding on all purchasers with notice. *Richards v. Abbottsford Homeowners Ass'n*, 809 S.W.2d 193, 195 (Tenn. Ct. App. 1990). However, they are strictly construed because they are in derogation of a property owner's right to unrestricted use of his or her property. *Id*. Here, the court must determine whether the Covenants and Modified Deed, even when strictly construed, give the Plaintiff rights to control the road.

* * *

Plaintiff argues that the language in the Modified Deed "plainly states that a 'portion of the existing drive located within the SMZ' may continue to be maintained for the placement of utilities." This is an inaccurate portrayal of the language in the Modified Deed, which states that the existing drive may be maintained, and "utilities may be installed," but not that it can be maintained specifically for utilities, to the exclusion of anything else. Plaintiff also argues that "[t]he SMZ is an area that is to remain 'in a natural condition' and there are [sic] to be no 'clearing of trees' or other vegetation without TVA's express permission. TVA granted Robmer Partners, and the Association as a successor in interest, the right to place utilities along the portion of the field road that crosses TVA's SMZ and nothing more." This is also not a complete characterization of the facts. TVA also granted the [A]ssociation the right to build a parking area within the SMZ, as discussed above. The court fails to see how the provisions of the Modified Deed as stated above are not met by TVA's permission in this matter. If TVA believes that the Association is overstepping the bounds of its permission, TVA may take action. Furthermore, the Covenants give a right for common usage of the Existing Drive at Article 4.4., by stating that the community as a whole has the use and enjoyment of the "Common Properties," which include the Existing Drive under Article 2.1.

Plaintiff further argues that the Existing Drive cannot be available for ingress and egress to the River Preserve Lots because the documents do not

-10-

specifically identify this road as an easement for ingress or egress. This is not consistent with the language in the Modified Deed and Covenants. While these documents do not specifically state ingress and egress, they also do not state or indicate that a separate driveway, to be built late in time, would be the *only* means of access to the other lots. Nor do they state that Plaintiff has a right to close that road. In fact, they specifically state that the Existing Drive is included as part of the "Common Properties" which the community as a whole have [sic] access to, and nowhere does it state that this access is limited to utilities.

Plaintiff claims that the work on the drive is trespass and requests appropriate damages. However, as discussed above, the Association has a right to maintain the existing drive or field road as conferred by the Modified Deed and by the Covenants at Art. 2.2C. Therefore, Plaintiff's claims for trespass have no merit.

\* \* \*

*4. Plaintiff's Additional Evidence*

Plaintiff further moves to be allowed to submit additional evidence in the form of 1) a March 6, 2006 letter from the president of the Association to TVA, 2) TVA's April 6, 2009 response, and 3) the original TVA deed to the land showing the boundary lines at that time. Defendants argue that this evidence cannot be allowed on the basis that it was not included in the original Motions and Responses for Summary Judgment.

In order to determine whether a material dispute of fact exists in a Motion for Summary Judgment, the court looks primarily to the Statement of Undisputed Material Facts and Response. *See Bennett v. Trevecca Nazarene University*, 216 S.W.3d 293, 299 (Tenn. 2007). Plaintiff previously admitted that it was undisputed that the property at issue is subject to the Modified Special Warranty Deed and the Declaration of Covenants. Plaintiff now, after the Motions and Responses have been completed, offers additional evidence that it asserts should be used in interpreting the documents that it has agreed apply to their [sic] circumstances. This is clearly improper. If Plaintiff believed that this information was necessary to interpreting the Covenants or Modified Deed, it should have offered this information as part of the proceedings, either as part of its Motion for Summary Judgment or as part of its Response to Defendants' Motions for Summary Judgment.

-11-

Even if the evidence had been submitted properly and considered, it would not have made a difference to the disposition of this case. As stated above, the parties agree that this is a case involving interpretation of the Covenants and Modified Deed, and that these are the documents which show the rights of the parties with regards to the land at issue. Plaintiff has not argued that these documents are ambiguous or that the court has any need to look to outside evidence in order to interpret their meanings. When an agreement is "clear and unambiguous, the parties' intentions are to be determined from the four corners" of that agreement. *Boker v. Holder*, 722 S.W.2d 676, 679 (Tenn. Ct. App. 1986) (citing *Pierce v. Flynn*, 656 S.W.2d 42 (Tenn. Ct. App. 1983)). Here, as discussed above, the Covenants and Modified Deed unambiguously show the rights of the parties to the land, and they do not require additional evidence to interpret these two documents. Interpretation of the parties' rights should be limited to interpretation of the Modified Deed and Covenants.

However, even if the evidence in question was not disallowed for the above reasons, it is still irrelevant to the issues at hand. Plaintiff wishes to present a letter exchange between Attorney James Howard and a representative from TVA, stating that TVA's deed modification does not prohibit lot owners from using the property to walk across or use the lake. It goes on to discuss restrictions against individual docks and how these restrictions could potentially be modified. At no point does TVA affirm that Plaintiff or other lot owners have any more rights to the land than permission to walk across it or use the lake recreationally [sic], activities which the parking area or field road would not prevent. This does not alter or contradict the Covenants and Modified Deed giving control of the SMZ to TVA, nor does it alter the fact that Plaintiff clearly waived any shoreline rights. Additionally, the original TVA land deed, earlier in time than the Modified Deed that determines Plaintiff's rights to the property, in no way impacts Plaintiff's current rights to the property under the current Modified Deed. For all of the above reasons, this additional evidence should not be considered and is not relevant to the ultimate decision of this case.

(citations to the record omitted).

Plaintiff filed a motion to alter or amend. The Trial Court entered a Final Order and Judgment on July 13, 2010 finding and holding, *inter alia*:

1. The Plaintiff's Motion to Alter or Amend is GRANTED. The

Memorandum and Order is hereby amended to delete the award of attorney's fees and expenses to the Defendant The River Preserve Homeowners' Association, Inc. ("Association"), as the Court upon reconsideration deems that Plaintiff Mountain Valley Properties, Inc.'s ("Plaintiff") Declaratory Judgment Action itself does not constitute a "default" as defined under Article 5.2 of the Declaration of Covenants and that no other facts or circumstances are present which constitute a "default" by Plaintiff of any of the Covenants' provisions entitling Defendant Association to an award of attorney's fees.

2. Alternatively, if this judgment is appealed and said appeal results in a remand for any purpose, the Court reserves the right to reverse its ruling on the attorney's fees issue and restore its original award of attorney's fees to the Defendant Association. Should an appeal of this matter result in the restoration of the award of attorney's fees and expenses to the Defendant Association, the Court determines that the attorney's fees and expenses set forth in the Application for Attorney's Fees filed by the Defendant Association are reasonable and were necessary for the conclusion of the case in the Defendant Association's favor[.]…

Plaintiff appeals to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises four issues on appeal: 1) whether the Trial Court erred in interpreting the recorded instruments with regard to the placement of a community parking area; 2) whether the Trial Court erred in interpreting the recorded instruments with regard to the existing drive; 3) whether the Trial Court erred in refusing to consider Plaintiff's additional late-filed evidence; and, 4) whether the Trial Court erred in stating that it reserved the right to reverse its decision regarding an award of attorney's fees if the Trial Court's order was appealed and the appeal resulted in a remand.

Our Supreme Court reiterated the standard of review in summary judgment cases as follows:

The scope of review of a grant of summary judgment is well established. Because our inquiry involves a question of law, no presumption of correctness attaches to the judgment, and our task is to review the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1997); *Cowden v. Sovran Bank/Cent. S.*, 816 S.W.2d 741, 744 (Tenn. 1991).

-13-

A summary judgment may be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). The party seeking the summary judgment has the ultimate burden of persuasion "that there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Id*. at 215. If that motion is properly supported, the burden to establish a genuine issue of material fact shifts to the non-moving party. In order to shift the burden, the movant must either affirmatively negate an essential element of the nonmovant's claim or demonstrate that the nonmoving party cannot establish an essential element of his case. *Id*. at 215 n.5; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). "[C]onclusory assertion[s]" are not sufficient to shift the burden to the non-moving party. *Byrd*, 847 S.W.2d at 215; *see also Blanchard v. Kellum*, 975 S.W.2d 522, 525 (Tenn. 1998). Our state does not apply the federal standard for summary judgment. The standard established in *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998), sets out, in the words of one authority, "a reasonable, predictable summary judgment jurisprudence for our state." Judy M. Cornett, *The Legacy of Byrd v. Hall: Gossiping About Summary Judgment in Tennessee*, 69 Tenn. L. Rev. 175, 220 (2001).

Courts must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997). A grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000). In making that assessment, this Court must discard all countervailing evidence. *Byrd*, 847 S.W.2d at 210-11. Recently, this Court confirmed these principles in *Hannan*.

*Giggers v. Memphis Housing Authority*, 277 S.W.3d 359, 363-64 (Tenn. 2009).

"Issues relating to the interpretation of written instruments involve legal rather than factual issues. These essentially legal questions can be resolved using summary judgment when relevant facts are not in dispute." *The Pointe, LLC v. Lake Management Association, Inc.*, 50 S.W.3d 471, 474 (Tenn. Ct. App. 2000) (citations omitted).

The Trial Court interpreted the written instruments which form the contract in this case, i.e., the Warranty Deed, the Covenants, the Modification Deed, and the Certification. As this Court stated in *Kafozi v. Windward*:

-14-

In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002)(citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

This Court's initial task in construing the Contract at issue is to determine whether the language of the contract is ambiguous. *Planters Gin Co.*, 78 S.W.3d at 890. If the language is clear and unambiguous, the literal meaning of the language controls the outcome of the dispute. *Id*. A contract is ambiguous only when its meaning is uncertain and may *fairly* be understood in more than one way. *Id.* (emphasis added). If the contract is found to be ambiguous, we then apply established rules of construction to determine the intent of the parties. *Id*. Only if ambiguity remains after applying the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Id*.

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698-99 (Tenn. Ct. App. 2005).

We first consider whether the Trial Court erred in interpreting the recorded instruments with regard to the placement of a community parking area. With respect to this issue, the Trial Court specifically found that "Plaintiff's land is not in question here. TVA controls the land, and TVA gave permission for the Association to use it to build. Plaintiff has no rights to the land and no ability to prevent the use of it." The evidence in the record on appeal shows that there is no genuine material dispute that the land upon which the community parking lot was located belongs to TVA and not to Plaintiff. Furthermore, it is undisputed that TVA gave The River Preserve Owners' Association, Inc. permission to build

the community parking area on the land controlled by TVA.

We agree with the Trial Court's analysis of this issue. "In the absence of statute or contract, the general rule is that a landowner may, by building on his own land, deprive the adjoining owner of the view which he had before the structure was erected without subjecting himself to legal liability." *Southern Advertising Co., Inc. v. Sherman*, 308 S.W.2d 491, 494 (Tenn. Ct. App. 1957). We agree with the Trial Court that the relevant documents do not give Plaintiff any right to prevent defendant The River Preserve Owners' Association, Inc. from building a community parking lot on land owned by TVA. In addition, although the Covenants provide that a community parking area shall be constructed upon Lot 7, nowhere is it stated that this will be the only or exclusive community parking area constructed. We affirm the Trial Court's decision with regard to this issue.

We next consider whether the Trial Court erred in interpreting the recorded instruments with regard to the existing drive. The Modification Deed clearly and unambiguously provides:

> that portion of the existing drive (generally shown as a "field road" on said Exhibit B) located within the SMZ and fronting Lots 7 and 8 may continue to be maintained so long as said maintenance area does not exceed twenty (20) feet in width, utilities may be installed along said drive in the SMZ,….

Plaintiff argues on appeal that this language means that the existing drive may be used only for utilities. We disagree, as did the Trial Court. The clear and unambiguous language of the Modification Deed provides that the existing drive "may continue to be maintained so long as said maintenance area does not exceed twenty (20) feet in width …" and then provides that "utilities may be installed along said drive .…" Nowhere is it stated that the existing drive may be used only for the installation or maintenance of utilities. Furthermore, the existing drive is shown on the plat and referred to in the Covenants wherein it is defined as part of the Common Properties of which the community as a whole shall have the use and enjoyment. Plaintiff does not have the right to close off the existing drive and prevent its use by the other lot owners.

Plaintiff also argues on appeal that because the Covenants provide for a joint driveway easement for Lots 7, 8, and 9, this fact precludes the owners of Lots 8 and 9 from using the existing drive. We disagree, as did the Trial Court. Nowhere within the Covenants is it stated that the joint driveway easement will be the exclusive method of ingress and egress. Furthermore, as stated above, the existing drive is listed within the Covenants as part of the Common Properties which are provided for the use and enjoyment of all of the lot owners. We affirm the Trial Court's decision with regard to the existing drive.

-16-

Next, we consider whether the Trial Court erred in refusing to consider Plaintiff's additional late-filed evidence. As this Court stated in *Delapp v. Pratt*:

Issues regarding admission of evidence in Tennessee are reviewed for abuse of discretion. *Dickey v. McCord*, 63 S.W.3d 714, 723 (Tenn. Ct. App. 2001). "[T]rial courts are accorded a wide degree of latitude in their determination of whether to admit or exclude evidence, even if such evidence would be relevant." *Id*. Our Supreme Court discussed the abuse of discretion standard in *Eldridge v. Eldridge*, stating:

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made." A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

Appellate courts ordinarily permit discretionary decisions to stand when reasonable judicial minds can differ concerning their soundness. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. *Id*. When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." *Id*.

*Delapp v. Pratt*, 152 S.W.3d 530, 538 (Tenn. Ct. App. 2004).

With regard to Plaintiff's additional evidence, the Trial Court specifically found that "Plaintiff previously admitted that it was undisputed that the property at issue is subject to the Modified Special Warranty Deed and the Declaration of Covenants." The Trial Court also found that these documents are clear and unambiguous. We agree. As the documents that are determinative of the issues involved in the motions for summary judgment are clear and unambiguous, it would have been improper to consider evidence outside of the four corners of those documents.

Furthermore, the documents which Plaintiff attempted to late file included a letter from the president of The River Preserve Owners' Association, Inc. to TVA, TVA's response to this letter, and the deed by which R. H. Siskin and Sons, Inc. took title from TVA, which was recorded in 1949. The Trial Court stated that consideration of the documents which Plaintiff attempted to file late would not have changed the outcome of this case in any event. We agree.

At most, reasonable minds could disagree as to the propriety of the Trial Court's decision to deny Plaintiff's motion to submit additional evidence, the very essence of a discretionary decision. We will not substitute our judgment for that of the Trial Court. This issue is without merit.

Finally, we consider whether the Trial Court erred in stating that it reserved the right to reverse its decision regarding an award of attorney's fees to The River Preserve Owners' Association, Inc. if the Trial Court's judgment was appealed and the appeal resulted in a remand. We note that Plaintiff does not assert that the Trial Court reached the wrong decision when it held that defendant The River Preserve Owners' Association, Inc. was not entitled to attorney's fees. Furthermore, defendant The River Preserve Owners' Association, Inc. concedes in its brief on appeal that existing law does not allow it as the prevailing party in this case to recover attorney's fees from Plaintiff.

Plaintiff's issue pertains to the language used by the Trial Court which states that the Trial Court reserved the right to revisit the issue of attorney's fees if the case were appealed and the appeal resulted in a remand. This attempt to reserve the right to revisit the issue of attorney's fees upon an appeal and subsequent remand was invalid. The Trial Court does not have such power. Upon remand for collection of the costs below, the Trial Court may not revisit this issue.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court solely for collection of the costs below. The costs on appeal are assessed against the appellant, Mountain Valley Properties, Inc., and its surety.

_____
D. MICHAEL SWINEY, JUDGE

-18-